AUGUSTUS P. LORING & another, trustees, *vs.* WILLIAM P. WILSON & others.

AUGUSTUS P. LORING, executor, *vs.* THOMAS BLAIR & others.

Suffolk.   December 7, 1898. — July 3, 1899.

Present: FIELD, C. J., HOLMES, MORTON, BARKER, & HAMMOND, JJ.

*Deed of Trust — Power of Revocation — Will — Public Charity — Power of Appointment — Intention of Testator — Legacies charged upon Real Estate — Waiver — Marshalling of Assets with which to pay Debts — Devise on Condition — Residuary Legatee — Nature of Debt — Real Property — Legacies void as not within Power of Appointment.*

A deed of trust, which contains no power of revocation on the part of the settlor without the consent of the trustees, is valid against himself and against the devisees and legatees in his will.

A direction to the testator's executor to "use the sum of five thousand dollars in such amounts and at such times, not exceeding three years from the date of his appointment, as he shall determine in providing free excursions for poor children in the city of B." is valid, as being within the power reserved to the testator in a deed of trust to appoint to charitable corporations; and, while the executor is not a charitable corporation, he may pay the money to some charitable corporation for the purpose of carrying the provision into effect.

Certain chattels given to A. by will were not properly included in a deed of trust, in which the testator reserved to himself a power of appointment by will, but were property which formerly belonged to the testator's mother and were included in a trust for his benefit in her will, and over which he had a general power of appointment. The bequest to A. was of "all the household furniture and effects, plate and plated goods, linen, china, books, prints, and pictures thereon, [referring to the homestead] and together with all cattle, live stock, and green-house plants thereon," etc. *Held*, that while the testator was mis-

taken in the nature of his title, his intention to pass to A. whatever title he could was clear, and was not overcome by the fact that the clause wherein the intent was manifested came after the clause where another intent was supposed to be lurking, in general language.

By a deed of trust the settlor reserved to himself a power of appointment by will, and he then executed this power by giving by will certain real estate, and the chattels belonging thereto, to A., upon the condition, so far as he could impose it, that A. should "pay or cause to be paid any legacies bequeathed by this my will, which from any cause whatever cannot be paid to the respective legatees out of the property, and in the manner in which such legacies are or purport to be bequeathed by this my will." Certain of the chattels were property which formerly belonged to the testator's mother, and were included in a trust for his benefit in her will, and over which he had a general power of appointment. The various legatees under the settlor's will waived all claim to have the legacies charged upon any of the real estate devised as above, or to have them "satisfied out of said real estate or out of any chattels included in the trust" created by the deed, or "to have the payment of them made a condition to the conveyance of such real estate to the devisees named." *Held*, that this waiver did not apply to the chattels originally belonging to the mother over which the testator had the general power of appointment, but that they passed to A. subject to the condition that the legacies charged on the devise and legacy to A. be paid.

A settlor executed a deed of trust in which he reserved to himself a power of appointment by will. By the will of his mother a trust was created for his benefit, and he was also given a power of appointment over it by will. Of the property of himself, exclusive of the property under the trust deed, and of the property of his mother, he gave a pecuniary legacy to A. and the residue to a society. He then executed the power of appointment reserved in the trust deed by giving his homestead estate, with certain chattels thereon, to B., on certain conditions named, and the above mentioned society was named residuary legatee. Some of the chattels given to B. were not included in the deed of trust, but formerly belonged to the testator's mother, and were included in the trust for his benefit. *Held*, that the debts of the testator were first to be paid out of the testator's absolute property, then out of the property of the mother, over which he exercised the power of appointment, these properties being sufficient to pay all the debts, then the bequest of the specific chattels formerly belonging to his mother's estate to B. was to stand, then the pecuniary legacy to A. was to be paid out of these properties, so far as it could be paid, and if anything was left, it was to go to the residuary legatee.

In this case, which was one of the construction of both a trust deed and a will executed by the same person, the court said that a debt due to the estate of the mother of the testator and settlor under an arbitration had with reference to certain real property purchased by the mother, for his use, stood on the same footing as any other debt, and the estate when conveyed to the executor of the will of the testator, his heirs and assigns, must be regarded as real property belonging to his estate.

Legacies to persons not within a power of appointment reserved to the testator in a deed of trust, are void.

THE FIRST CASE was a bill in equity filed April 7, 1898, by the trustees under a trust deed executed by Francis B. Hayes

on June 12, 1889, seeking instructions as to their duties thereunder. At the request of the parties, the case was reserved by *Barker*, J., for the consideration of the full court, upon the bill, answers, and an agreed statement of facts.

THE SECOND CASE was a petition by the executor of the will of Francis B. Hayes seeking instructions as to his duties thereunder. At the request of the parties, the case was reserved for the consideration of the full court by *Field*, C. J., upon the bill, answers, an agreed statement of facts, and a certain stipulation. The facts in each case appear in the opinion.

*R. M. Morse*, for the executor.

*A. Lord*, for Wilson.

*P. Dexter*, for Blair.

*J. B. Warner*, for the Massachusetts Horticultural Society.

*W. A. Hayes, 2d*, for other defendants, submitted the case on a brief.

HAMMOND, J. The first suit is by the trustees under the deed of trust executed by Francis B. Hayes on June 12, 1889, for instructions in regard to their duties under such deed. The second suit is by the executor of the will of Francis B. Hayes, for instructions in regard to his duties under the will. Both cases were reserved on the pleadings, agreed statement of facts, and a stipulation on file, and the same questions arise in each case. The agreed statement of facts is as follows.

" The trustees under the trust of June 12, 1889, have paid all the pecuniary legacies appointed in Mr. Hayes' will except those to Blair, Loring, Miss Shurtleff, two of Comley's children, Comley's wife, and that for the benefit of poor children, which are the legacies about which instructions are asked in the bill. They have also paid out of the trust fund to the executor of the will, towards his expenses incurred in establishing the will, the sum of sixty-six thousand dollars ($66,000), this payment being made with the consent of the Massachusetts Horticultural Society, to whom the residue of the trust is appointed ; they have paid to the Horticultural Society on account of the residue, two hundred thousand dollars ($200,000) ; they have retained in their hands, awaiting the decision of the questions raised by this bill, and the decision of the full court on the question whether interest is payable on legacies, the sum of

sixty-one thousand nine hundred and sixty-seven and $\frac{16}{100}$ dollars ($61,967.16), and in addition real estate valued at about four thousand dollars ($4,000).

"The executor holds in his hands, from the trust fund established by the testator's mother, over which he had general power of appointment by will, about $7,000, and also holds as assets of the estate never in any trust about $6,900, and a claim on real property of the estimated value of $2,500, making in all, money and property held by the executor to the amount of $16,400.

"In 1891 Hayes, acting with the consent of the trustees under the trust of June 12, 1889, set apart his library, which had previously formed a part of that trust, upon a new and specific trust for the payment of such debts as he might owe at his death. This library was supposed to be worth from twenty-five thousand dollars ($25,000) to forty thousand dollars ($40,000). The debts due from Hayes' estate at his death in 1895 were about seventeen thousand dollars ($17,000), all of which had been incurred since the trust deed of 1889 was executed. Since the bill in this cause was filed the library has been sold, and has yielded only about ten thousand dollars ($10,000), which will be insufficient to meet his debts and the interest thereon by about ten thousand dollars ($10,000).

"During the lifetime of the testator Francis B. Hayes, and in or about the years 1889 and 1890, said Hayes, being then engaged in litigation with the family of his wife and others, and being desirous of purchasing a residence at Ascutneyville, State of Vermont, Mrs. Margaret M. Hayes, his mother, purchased a certain estate in said Ascutneyville for the use of the testator, taking a conveyance to herself, and the testator then entered on said estate, expended large sums on improvement thereof, lived thereon and had his residence and paid taxes thereon for some time afterwards.

"After the death of Mrs. Hayes this title descended to her heirs at law, or was devised to her residuary legatees, who are the half brothers and sisters of the testator.

"There being some doubt as to the question in what manner this property should be treated, it was referred by the executor to arbitration, and the arbitrator found that the amount expended

by Mrs. Hayes in the purchase of said estate for the use of her son, with interest and expenses, amounting in all to about twenty-six hundred dollars ($2,600), should be charged as a debt to the estate of the testator, Francis H. Hayes. This has never been paid, and is included in the ten thousand dollars balance of indebtedness which is stated as due in the first agreement of facts in this case.

"The arbitrator also found that on the payment of said indebtedness to said heirs at law or residuary devisees the executor would then be entitled to conveyance of said real estate, and this amount is also referred to in said agreed statement of facts, as 'a claim on real property of the estimated value of twenty-five hundred dollars.' The title has not yet been conveyed by the heirs or devisees of Mrs. Hayes, but they are ready to convey it to the executor, or as he may direct, on receiving payment of the sum found by the arbitrator, and when conveyed it will be a part of the general assets of the testator not covered by any trust.

"There also remains unpaid a balance of about $15,000 of the expenses incurred by the executor in establishing the will.

"Of the money spent by the trustees since the testator's death in the care of the property at Lexington known as Oakmount (over $18,000), a part was spent in necessary repairs on the buildings, taxes and insurance, a part in the care of chattels, plants, and shrubs which never formed a part of the trust of 1889, were not attached to the estate, and did not pass by the appointment of Oakmount, and the remainder was spent in maintaining the grounds about the mansion house or the extensive ornamental grounds surrounding a gentleman's residence with trees and shrubs, lawns, drives, walks, and the surroundings of an expensive country seat."

The stipulation is as follows:

"It is agreed by the several parties as follows:

"1. The legacies or gifts bequeathed or appointed in the will of Francis B. Hayes to Thomas Blair, Augustus P. Loring, Sarah Shurtleff, Eliza J. Comley, and Antoinette J. Horch, respectively, are not within the limits of the power of appointment reserved by said Hayes to himself by his trust deed of June 12, 1889; and the said legatees respectively waive and abandon all claim to have said legacies or gifts charged upon any of the real

estate which is devised by the first paragraph of the second part of said will to William P. Wilson for life, and after his death to other persons, or to have such legacies or gifts satisfied out of said real estate or out of any chattels included in said trust, or to have the payment of them made a condition to the conveyance of such real estate to the devisees named in said paragraph.

" 2. The expenses incurred in the care and preservation of the furniture and other chattels at Oakmount since the death of Mr. Hayes shall be repaid to the trustees out of the proceeds of those articles now in the hands of the executor.

" 3. The entire expenses of establishing the will shall be borne by the three funds interested in setting up the will, in proportion to their size ; that is, by the general assets of the estate never in any trust, the proceeds of property in the trust established by Margaret M. Hayes, and the fund in the trust of 1889 (not including in this fund the real estate called ' Oakmount,' which is specifically devised).

" 4. An agreement having been made by the parties in interest disposing of all questions concerning the provision made in said will for the benefit of James Comley, and Harriet E. Comley his wife, and disposing also of the question respecting the payments made by the trustees since the death of said Hayes in the care and maintenance of his real estate, no question respecting these matters now remains for argument in this case.

" 5. The only questions presented by the bill for instructions in this cause, or by the bill in the cause of Loring, executor, against Blair and others, which now remain to be passed upon by the court, are, —

" First. The question respecting the bequest for excursions for poor children.

" Second. The question whether the legacies to Blair, Loring, Miss Shurtleff, and the daughters of Comley are to be satisfied out of the fund covered by the trust of 1889, though not within the powers of appointment reserved by the testator over that fund.

" Third. The question raised by the amendment to the bill respecting the payment of a sum from the trust fund to the executor to satisfy the debts of the testator, or some part of them, so as to exonerate the general assets of the estate.

"Fourth. The question how the residue of the general assets of the estate, not derived from any trust, shall be applied to the satisfaction of debts and legacies.

"Fifth. The question how the cash and the residue of the proceeds of the furniture and chattels included in the trust established by the will of Margaret M. Hayes shall be applied to the satisfaction of debts and legacies, including the question whether the furniture and chattels were specifically bequeathed with ' Oakmount.'"

The deed of trust of June 12, 1889, contains no power of revocation on the part of Francis B. Hayes without the consent of the trustees, and therefore we think that it is valid against Hayes himself and against the devisees and legatees found in his will. In that deed of trust it is provided that "upon and after the death of the said Francis B. Hayes," the trustees are "to hold the said trust property, original and substituted, and any accumulations thereof and any additions thereto, and also said homestead estate and books and library, to the use or for the benefit of such one or more of the following persons and corporations, and in such manner as the said Francis B. Hayes may by will appoint, namely: any wife of his, his blood relations, their husbands and wives, the children of said husbands and wives, persons at any time employed as domestic servants or gardeners by himself or by his parents, and also charitable corporations, and in default of such appointment," etc. This limited power of appointment Francis B. Hayes executed by his will in the manner hereinafter mentioned.

By the will of his mother, Margaret M. Hayes, certain property of hers was given to a trustee for the use of Francis B. Hayes during his life, and "upon and after the death of said Francis B. Hayes to hold such trust fund or property, original or substituted, or any accumulation thereof or any addition thereto, to the use and for the benefit of such persons or corporations as my said son may in whole or in part by will, or any instrument in the nature of a will, appoint, and in default of such appointment," etc. This general power of appointment Francis B. Hayes also executed by his will.

In his will, in the clause before the first article, Francis B. Hayes proposes to dispose of the property referred to and des-

ignated in the will of his mother, over which he was given a general power of appointment; and also to dispose of all the estate, real, personal, and mixed, of which he should die seized and possessed, exclusive of the property in trust under the deed of June 12, 1889, and of any property situate in England. Out of this property of himself and of his mother he gives by the first article of the will ten thousand dollars to Thomas Blair. He next gives by the second article two thousand five hundred dollars to Thomas Blair in trust, which legacy he revokes by a codicil. He next, by the first clause of the third article, gives, devises, bequeaths, and appoints the residue of the said property and estate to the Massachusetts Horticultural Society. The testator was here speaking of the residue of the property referred to in the will of his mother, over which he had a general power of appointment, as well as of all the property of which he should die seized or possessed, except the trust property under the deed of trust of 1889, and any property of his situated in England. It does not appear that Francis B. Hayes died seized or possessed of any property situate in England. After making these dispositions of the property under his mother's will, over which he had a power of appointment, and of his own property not included in the deed of trust and not situate in England, he proceeds in the remainder of the third article of the will to execute the limited power of appointment reserved in said deed of trust, in the following manner: "Now therefore pursuant to and by virtue of the said power so given, limited, or reserved to me in and by the said indenture of the twelfth day of June, one thousand eight hundred and eighty-nine, and every other power and authority in me vested, or in any wise enabling me hereunto as to all the property referred to and designated in the said indenture of trust as aforesaid, and now remaining subject to the trusts thereof, I give, devise, bequeath, and appoint the same in manner following, that is to say," etc. After making twenty-two devises and bequests of the property included in said deed of trust by the twenty-third section, he devises, bequeaths, and appoints " all the rest, residue, and remainder of the said property comprised in or now subject to the trusts of the said indenture of the twelfth June, one thousand eight hundred and eighty-nine," to the Massachusetts Horticultural Society.

The first section under this third article of the will contains a devise of the homestead called Oakmount to William Power Wilson for life, with remainder in tail to his issue, "together with all the household furniture and effects, plate and plated goods, linen, china, books, prints, and. pictures thereon, and together with all cattle, live stock, and green-house plants thereon," etc. This section ends as follows: "And I declare that the said gift is made upon the further condition, so far as I am able to impose such a condition, that the said William Power Wilson do and shall pay, or cause to be paid, any legacies bequeathed by this my will which from any cause whatever cannot be paid to the respective legatees out of the property and in the manner in which such legacies are or purport to be bequeathed by this my will."

The third section under this article is as follows: "Third, I give to the said James Comley, my gardener, ten thousand dollars, and to each of his children living at my decease five hundred dollars. And I further direct that the said James Comley and his wife be allowed to continue to occupy free from all rent or other charge the dwelling-house now occupied by them on my estate in Lexington during their joint lives and the life of the survivor of them."

The fifth section under this article is as follows: "Fifth, I give to Sarah Shurtleff the sum of two thousand dollars."

The nineteenth. section under this article is as follows: "Nineteenth, I direct my executor hereinafter named to appropriate and use the sum of five thousand dollars in such amounts and at such times, not exceeding three years from the date of his appointment, as he shall determine in providing free excursions for poor children in the city of Boston."

The twenty-second section under this article is as follows: "Twenty-second, and I give and bequeath to Augustus P. Loring, my executor hereinafter named, the sum of five thousand dollars if, but not otherwise, he shall accept the office of executor of this my will."

The first question is whether the bequest for free excursions for poor children is valid as being within the power reserved to Francis B. Hayes in the deed of trust to appoint to charitable corporations. The executor is not a charitable corporation, but

the purpose of the gift is charitable, and we think that the executor can pay the money to some charitable corporation for the purpose of carrying the provisions of this section into effect. It is a direction to use money in a way in which charitable corporations could use it, and the section need not fail because the executor is not himself a charitable corporation.

The legacies given to each of the children of James Comley by the third section, to Sarah Shurtleff by the fifth section, and to Augustus P. Loring by the twenty-second section, are to persons not within the power of appointment reserved to Francis B. Hayes in the deed of trust. They cannot, therefore, be paid out of the property comprised in that deed, and we are of opinion that they cannot be paid at all, except as hereinafter stated.

The legacy given by the first article of the will to Thomas Blair is given out of his own property and that of his mother, over which he had a power of appointment, and must be paid, except as hereinafter stated, subject to the debts of the testator, and certain specific bequests to Wilson hereinafter named, out of these properties.

Some of the chattels given to William Power Wilson by the first section under the third article of the will are not property included in the deed of trust, but are property which formerly belonged to the testator's mother, and were included in the trust for his benefit in her will, and over which he had a general power of appointment; and one of the questions is whether these articles passed to Wilson under that section.

We are of opinion that they did so pass. The testator starts out at first to dispose of his own property and that over which he had a testamentary power of appointment under the will of his mother; and after some special bequests gives the residue to the Massachusetts Horticultural Society.

Evidently supposing that there is nothing further to be done as to that property, he goes on to act under the power reserved in the trust deed. He begins specifically, and the very first thing which comes to his mind is Oakmount and the personal property used and connected therewith; and then, in plain and explicit terms, he declares his will to be that Wilson shall have the articles particularly described by classes in this section. It

is the first time these articles are particularly mentioned.   There can be no question that he intended all this property to go to Wilson.   It is not reasonable to suppose that he thought he had already disposed of it or any part of it under a general residuary clause, the words of which had just passed from his lips.   Oakmount was to go to Wilson, and it was natural that the articles which always had been associated in the mind of the testator with that estate and were its natural and usual adjuncts should go with it.

He was mistaken in the nature of the title under which he held them, but his intention to pass to Wilson whatever title he could stands out plainly and distinctly, and is not overcome by the mere fact that the clause wherein the intent is manifested comes after the clause where another intent is supposed to be lurking in general language.   He was thinking rather of what he should do with the property than of the particular power under which he was acting.   The dominant intent was that Wilson should have that specific property, and we think that intent can be carried out without violating any sound rule of construction.

But this bequest of Oakmount and the chattels connected therewith was encumbered with the condition ("so far as [the testator] could impose such a condition") that Wilson should "pay or cause to be paid any legacies bequeathed by this my will which from any cause whatever cannot be paid to the respective legatees out of the property and in the manner in which such legacies are or purport to be bequeathed by this my will."

The various legatees "waive and abandon all claim to have said legacies or gifts charged upon any of the real estate which is devised" by this section of the third item, or to have them "satisfied out of said real estate or out of any chattels included in said trust" created by the deed, or "to have the payment of them made a condition to the conveyance of such real estate to the devisees named in said paragraph."

But this waiver does not apply to such of the chattels as were the property of the mother over which the testator had the general power of appointment.   And as to such chattels, we think they pass to Wilson subject to the condition that the legacy to

Blair, the legacies to the children of James Comley by the third section, to Sarah Shurtleff by the fifth section, and to Augustus P. Loring by the twenty-second section, be paid.

The debts of the testator we think are primarily payable out of the property of which he died seized and possessed, and out of the property which he derived from his mother's will, over which he exercised the general power of appointment. These properties are more than sufficient to pay all the debts in full.

One contention has been that for the sake of paying debts the deed of trust of June 12, 1889, is voidable by the creditors of Francis B. Hayes, and that they should first be paid out of the property comprised in this deed of trust in order that Blair may receive his legacy in full. But whether, if there were no other property for the payment of the debts of Francis B. Hayes the property included in the deed of trust could be applied to the payment of his debts, we find it unnecessary to decide, because the property of which he died seized and possessed, and the property of his mother over which he had and exercised a general power of appointment, are sufficient to pay all the debts, and we think the debts are primarily to be paid out of these properties. There must be included in this property of the mother certain chattels mentioned in the devise and bequest in the third article to William Power Wilson. The debts must first be paid out of the testator's absolute property, then out of the property of the mother over which the testator had a general power of appointment which he exercised; then the bequest of the specific articles formerly belonging to his mother's estate, which in the third article is made to Wilson, is to stand; then the legacy to Blair must be paid out of these properties, so far as it can be paid, and if anything is left of these properties it falls into the residue and is payable to the Massachusetts Horticultural Society. *Olney* v. *Balch*, 154 Mass. 318. See *Loring* v. *Massachusetts Horticultural Society*, 171 Mass. 401; *White* v. *Massachusetts Institute of Technology*, 171 Mass. 84, 96; *Emmons* v. *Shaw*, 171 Mass. 410.

The debt due to the estate of the mother of Francis B. Hayes under the arbitration had with reference to the real property at Ascutneyville in Vermont, stands on the same footing as any other debt, and that estate when conveyed to the executor

of the will of Francis B. Hayes, his heirs and assigns, must be regarded as real property belonging to Francis B. Hayes.

The legacies out of the property included in the deed of trust to Augustus P. Loring, executor, by the twenty-second section, to the children of James Comley by the third section, to Sarah Shurtleff by the fifth section, are void.

*Decree accordingly.*