CARL B. FERGUSON, executor, *vs.* MASSACHUSETTS AUDUBON
SOCIETY & others.

Norfolk.   May 15, 16, 1941. — June 6, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Devise and Legacy,* Taxes, Debts, Expenses of administration, Power,
"Request." *Power. Words,* "Request," "My estate," "Inheritance
taxes."

Under a provision in a will appointing certain property with a "request"
that certain taxes, expenses and charges be paid therefrom and with
a gift to the appointee of "any balance . . . after the above pay-
ments," such payments were mandatory on him.
In a will disposing of both the individual property of the testator and
property over which he had powers of appointment and carefully dis-
tinguishing between them, the words "my estate" in a provision re-
quiring a beneficiary of appointive property to pay therefrom certain
taxes "assessed against my estate" meant the testator's own estate.
Upon an interpretation of an entire will disposing of the testator's own
property and also property over which he had powers of appoint-
ment and carefully distinguishing between them, a provision that a
beneficiary of part of the appointive property, who was also named
executor of the will, should pay from such property "all Federal and
State inheritance taxes . . . assessed against" the testator's own estate
required the beneficiary so to pay the entire Federal estate tax levied
thereon and measured by both the individual property of the testator
and the appointive property, and so to pay Massachusetts succession
taxes upon the individual property, but did not require the benefi-
ciary so to pay Massachusetts taxes upon successions to the appointive
property; and a further provision, requiring such beneficiary to pay
from the appointive property given him "unpaid debts, expenses and
charges of administration if there should be insufficient funds in my
own estate to pay" them, was inapplicable where the assets of the
testator's own estate were in fact sufficient to pay them.

PETITIONS, filed in the Probate Court for the county of
Norfolk on April 16, 1938, and January 31, 1941, for the
allowance of certain accounts.

The cases were heard by *Poland,* J.

*J. T. Phelps,* for Ferguson, individually.

*W. D. Turner,* (*E. B. Church* with him,) for Massachu-
setts Audubon Society.

*D. R. Pokross,* (*E. G. Fischer* with him,) for Massachusetts Society for the Prevention of Cruelty to Children and others.

*S. R. Wrightington,* for New England Hospital for Women and Children.

*L. H. Rhinelander,* for Animal Rescue League of Boston, submitted a brief.

FIELD, C.J. This case was heard in the Probate Court for final determination upon the first and supplemental accounts of Carl B. Ferguson, executor of the will of Albertina von Arnim, late of Brookline, deceased, and is reported for our consideration under G. L. (Ter. Ed.) c. 215, § 13.

Said Albertina von Arnim died October 12, 1936, leaving a will which was dated November 29, 1933, and proved April 9, 1937. She had a power of appointment under the will of her mother, Elizabeth von Arnim, and also a power of appointment under the will of her father, Theodore F. von Arnim. The testatrix provided in her will that "It Is My Intention And Purpose in this Will to clearly distinguish between my own estate and the interest which I have in my mother's estate and the interest which I have in my father's estate." The will was divided into three sections entitled, respectively, "Section 1. Disposition of My Own Estate," "Section II, Disposition of My Interest in My Mother's Estate," and "Section III. Disposition of My Interest in My Father's Estate." Carl B. Ferguson was nominated by the will "to be the Executor and Trustee under this Will, and under all sections of this Will."

The items in the accounts that are now in controversy are of two classes. One class includes the following items: "First Account, Schedule 'B': 122 Jan. 6, '38 Paid Federal Estate tax chargeable to Carl B. Ferguson, residuary legatee as distribution under par. 21. $21561.42; 126 Apr. 7, '38 Paid Carl B. Ferguson, account residuary legacy, (Mass. Inheritance taxes) 14309.77. Supplemental Account, Schedule 'B': 15 Aug. 19, '38 Paid U. S. Collector of Internal Revenue, account deficiency Estate tax claimed 2205.63; 16 Sep. 19, '38 Paid Commonwealth of Mass. additional tax 1–1–37 to 5–1–37 (10%)

11.93; 17 Sep. 19, '38 Paid Commonwealth of Mass. additional tax, 5–1–37 to 12–31–37 (10%) 2.11." The other class of items is described in the report as follows: "The items of debts and charges in the accounts appear in a great number of items. It appears to be unnecessary to report these items in detail. They include items of $5,000 allowed as costs and expenses to contestants of the will, $12,000 as compensation of the executor and $20,000 for services of counsel. Other charges appearing in the accounts amount to approximately $3,000. The total debts and charges in the current accounts amount to about $40,000."

No question is raised as to the amounts of these items. The judge of probate ruled in respect to the first class of items "that by paragraph twenty of the will all estate and legacy taxes should be paid by the accountant out of the residue of the testatrix's mother's estate appointed to him by her," but if "this ruling is wrong as to the taxes, in whole or in part, the decrees should be modified by imposing such taxes in whole or in part upon the residue of the testatrix's own estate or her legatees." In respect to the second class of items the judge of probate found as a fact "that the amount of the testatrix's own estate was sufficient to pay said debts and charges and . . . ruled that the accountant properly charged them against the residue of said estate," but if "this ruling is wrong, the decrees should be modified by charging the various items of debts and charges of administration to the residue which the accountant takes by appointment under said paragraph twenty." Decrees were ordered allowing accounts conforming to these rulings.

The matters in controversy are whether these several items are required to be paid by the accountant, Carl B. Ferguson, out of the residue of the testatrix's mother's estate appointed to him by the testatrix. Although the accountant charged the items of the first class herein described to the residue of the testatrix's mother's estate appointed to him by her, he inserted a memorandum in the supplemental account purporting to reserve the right to make the contention that these items ought to be paid out

of the residue of the testatrix's own estate or by the legatees under the will.

A determination of the matters in controversy involves an interpretation of the twentieth clause of the will, which is included in the second section thereof entitled "Disposition of My Interest in My Mother's Estate," and is as follows: "Twentieth: All the rest and residue of my interest in my said mother's estate, and any remaining property I may be empowered to dispose of by my said mother's Will I give, devise and bequeath to the said Carl B. Ferguson of Auburndale and request that out of said rest and residue of my interest in my said mother's estate he pay all Federal and State Inheritance taxes if any, levied or assessed against my estate within one year of the probate of this Will. I also request the said Carl B. Ferguson to pay out of said rest and residue of my interest in my said mother's estate, all unpaid debts, expenses and charges of administration if there should be insufficient funds in my own estate to pay the same, any balance of said rest and residue of my interest in my said mother's estate after the above payments I give, devise and bequeath to the said Carl B. Ferguson."

This provision of the will is to be interpreted in the light of its context, the general scheme of the will as a whole and the circumstances attending the execution of the will for the purpose of ascertaining the intention of the testatrix as disclosed by the will. *Boston Safe Deposit & Trust Co.* v. *Park*, 307 Mass. 255, 259, 268. The only attending circumstances appearing in the record are that the testatrix was about seventy-nine years old at the time of the execution of the will, and that at that time her own estate amounted to about $75,000 — although at the time of her death it amounted to $225,000. It appears from the record that the amount of the testatrix's mother's estate over which the testatrix had a power of appointment was about $115,000, and that the amount of the testatrix's father's estate over which the testatrix also had a power of appointment was about $40,000, — seemingly, in each instance, as of the time of the death of the testatrix, although it was not so expressly stated in the record.

Apparently the principal purposes of the testatrix's will were to provide for her "companion," Xoa M. Shafer, and for her sister-in-law, Fannie I. von Arnim. These beneficiaries were provided for specially, although not exclusively, by different sections of the will. The testatrix created a trust for the life of each of these beneficiaries. By the first section of the will disposing of the testatrix's own estate — by the fifth clause of the will — the testatrix gave to Carl B. Ferguson the sum of $70,000 in trust to pay the net income thereof to Xoa M. Shafer, the testatrix's "companion," for her life and upon her death to divide the principal of this trust, share and share alike, among ten beneficiaries — eight charitable corporations or associations, said Fannie I. von Arnim and said Carl B. Ferguson or his heirs if he had died. By this section of the will the testatrix also gave to her "companion," Xoa M. Shafer, certain real estate and household furniture and a pecuniary legacy of $1,000. By this section of the will also the testatrix gave to her "friend," Edith C. Baker, certain real estate and household furniture. The residue of the testatrix's own estate was given to her sister-in-law, Fannie I. von Arnim, but if she was not living at the death of the testatrix this residue was to become a part of the trust fund created by the fifth clause of the will. By the third section of the will disposing of the estate of the testatrix's father over which the testatrix had a power of appointment, the testatrix appointed this entire appointive property to Carl B. Ferguson, in trust, to pay the net income thereof for life to the testatrix's sister-in-law, Fannie I. von Arnim, and upon her death to distribute the principal, share and share alike, among the eight charitable corporations or associations that were given shares in the remainder of the trust fund created by the first section of the will, and Xoa M. Shafer, the testatrix's "companion." By the second section of the will disposing of the estate of the testatrix's mother over which the testatrix had a power of appointment, $3,000 was appointed to said Xoa M. Shafer, $6,000 was appointed to said Fannie I. von Arnim, and $5,000 was appointed to said Edith C. Baker. One thousand dollars was appointed to each of five persons described by the testa-

trix as "my friend," $2,000 was appointed to another person so described, $500 was appointed to another person, and $1,000 was appointed to the Brookline Friendly Society. Five thousand dollars was appointed to said Carl B. Ferguson "in recognition of his many kindnesses to me." The rest and residue of the estate of the testatrix's mother over which the testatrix had a power of appointment was dealt with by the twentieth clause of the will already set forth. The twenty-second clause of the will is as follows: "If any of the legatees named in any part of this Will shall die or cease to exist before the probate of this Will, unless otherwise provided in this Will, the legacy or legacies herein left to such legatee shall be disposed of according to the residuary clause of the section of my said Will under which the said legacy or legacies are set forth."

From the foregoing analysis of the will it appears that the general scheme of the will as a whole — subject to some variations — was to provide out of the testatrix's own estate for her "companion," Xoa M. Shafer, and to provide out of the testatrix's father's estate for her sister-in-law, Fannie I. von Arnim, and in each instance, after the death of the life tenant, to provide for various charitable corporations or associations, and out of the estate of the testatrix's mother to make additional provisions for said Xoa M. Shafer and said Fannie I. von Arnim, to make various gifts to friends of the testatrix and others, and to provide to some extent for the burden of taxes, unpaid debts, expenses and charges of administration. Clause 20 of the will is to be interpreted in accordance with this general scheme of the will as a whole so far as the specific language of the clause reasonably permits.

The provisions of clause 20 of the will relating to the payment of taxes, unpaid debts, expenses and charges of administration are expressed in terms of requests to said Carl B. Ferguson — who was named by the will as executor, though not so described in this clause of the will — and not in terms of commands or directions. Clearly, however, though the word "request" is used in these provisions of the clause, the provisions for these payments are mandatory.

*McCurdy* v. *McCallum,* 186 Mass. 464, 468–471. See also *Warner* v. *Bates,* 98 Mass. 274, 275–280; *Weber* v. *Bryant,* 161 Mass. 400, 403. This interpretation is placed beyond doubt by the fact that after the gift to said Carl B. Ferguson at the beginning of the clause of the "rest and residue of my interest in my said mother's estate, and any remaining property I may be empowered to dispose of by my said mother's Will," and after the requests for the payment by him of taxes, unpaid debts, expenses and charges of administration out of said "rest and residue," the clause provides that "any balance of said rest and residue of my interest in my said mother's estate after the above payments I give, devise and bequeath to the said Carl B. Ferguson." This language imports that the provisions for the payment of taxes, unpaid debts, expenses and charges of administration are mandatory, and that the only beneficial gift to said Carl B. Ferguson by the clause is the gift of the "balance . . . after the above payments." Indeed, said Carl B. Ferguson makes no contention to the contrary. It is, therefore, necessary to decide what, if any, taxes, unpaid debts, expenses and charges of administration are within the scope of these mandatory provisions.

First. As to taxes. The taxes that by clause 20 of the will said Carl B. Ferguson is required to pay from the residue of the estate of the testatrix's mother are "all Federal and State Inheritance taxes if any, levied or assessed against my estate within one year of the probate of this Will." The determination of the scope of this requirement depends not upon the interpretation of the statutes imposing the taxes but upon the intention of the testatrix as expressed in her will, although the nature of these statutes cannot be disregarded in determining such intention. See *Prescott* v. *St. Luke's Hospital of New Bedford,* 280 Mass. 229, 231. "Testators are not held to the use of words with technical nicety provided their purpose is plain." *Prescott* v. *St. Luke's Hospital of New Bedford,* 280 Mass. 229, 232. "It is the general rule that the intent of a testator is not to be thwarted by refinements and distinctions resting upon subtlety and ingenuity or by lack of technical accuracy in

the use of words or by unduly stressing the literal meaning of a few words or by attaching to them a hard and fast meaning which is not in consonance with the setting in which they were employed." *Beals* v. *Magenis*, 307 Mass. 547, 552.

The "Federal and State Inheritance taxes" which said Carl B. Ferguson is required to pay out of the residue of the estate of the testatrix's mother are such taxes "levied or assessed . . . within one year of the probate of this Will," clearly meaning such taxes imposed within that period. Properly it is not contended that the "Federal and State Inheritance taxes" here involved were not imposed within that period.

Furthermore, the "Federal and State Inheritance taxes" required to be paid out of the residue of the testatrix's mother's estate are such taxes "levied or assessed" against "my estate," meaning, of course, the testatrix's estate. The question therefore arises whether the words "my estate" as here used are the equivalent of the words "my own estate" and refer to the individual property of the testatrix or whether these words refer to all the property, individual and appointive, disposed of by the testatrix's will. The latter interpretation is possible for the testatrix had as broad power to dispose of the appointive property as to dispose of her individual property and the appointive property would be distributable by the executor of her will. *Ferguson* v. *Commissioner of Corporations & Taxation, ante,* 318, and cases cited. But the testatrix throughout her will has carefully distinguished between her individual property and the appointive property by referring to the former as "my own estate." In several places in the will, however, the words "my estate" are used where they clearly are the equivalent of "my own estate." And if the testatrix had intended by clause 20 of her will to provide for the payment of all "Federal and State Inheritance taxes" imposed upon successions to property disposed of by her will, it would have been unnecessary for her to limit the provision to such taxes levied or assessed "against my estate." The words "against my estate" are not to be treated as surplus-

age. The words "my estate" are naturally to be given the same meaning in clause 20 as elsewhere in the will, that is, the same meaning as the words "my own estate." Such an interpretation cannot rightly be said to be unnatural or in conflict with the general scheme of the will. At the time of the execution of the will the testatrix's individual property was valued at about $75,000. After making devises and bequests of real estate and chattels, the value of which does not appear, and giving a pecuniary legacy of $1,000, from the testatrix's individual estate, she created a trust fund of $70,000 out of her individual property for the benefit of her "companion," Xoa M. Shafer, for her life. In view of the likelihood that the testatrix's individual property might not be sufficient, or might be barely sufficient, to create a trust fund of this amount, it would not be unnatural for her to provide against the depletion of this trust fund by "Federal and State Inheritance taxes" even though she did not make like provisions to relieve the beneficiaries of appointive property from the burden of such taxes. We therefore interpret the words "my estate" in clause 20 as referring to the testatrix's "own estate."

1. The Federal tax involved in the present case is undoubtedly technically an estate tax rather than an inheritance tax. But the words "Inheritance taxes" are sometimes applied to taxes that are technically estate taxes. See *Griswold* v. *Helvering*, 290 U. S. 56, 57. These words are commonly understood as descriptive of death duties generally without differentiation on the ground of their technical nature. We think that these words as used in clause 20 considered in their setting include Federal estate taxes although such a tax is not technically an inheritance tax. See *Beals* v. *Magenis*, 307 Mass. 547, 550–551. No contention to the contrary is made by the accountant.

It is, however, contended that the Federal estate tax imposed by reason of the estates of the testatrix's mother and of the testatrix's father over which the testatrix had powers of appointment is not required to be paid out of the residue of the testatrix's mother's estate on the ground that this Federal estate tax was not imposed upon the testa-

trix's "own estate." This contention cannot prevail. For the purpose of the Federal estate tax under the Federal statutes applicable to the present case the individual property of a testator and property over which such testator has a general power of appointment are combined to constitute the "gross estate" of the testator that, after authorized deductions, constitutes the "net estate" of the testator which is the measure of the Federal estate tax that the executor of the will of the testator is required to pay. U. S. C. (1934 ed.) Sup. V, Title 26, §§ 810, 811 (f), 812, 822 (b). In *Riggs* v. *Del Drago*, 317 U. S. 95, it was said that "Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax." And it was said with reference to a previous statute (Revenue Act of 1916) that it "did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax," and that "Congress, from 1916 onward, has understood local law as governing the distribution of the estate after payment of the tax" with limited exceptions not here material (pages 97–99). In *Dexter* v. *Jackson*, 245 Mass. 333, the court had under consideration a case in which a testatrix by her will disposed of her individual property and exercised a general power of appointment. The court said that the Federal estate tax "must be paid out of the residue of the estate unless there be a testamentary expression of intention to the contrary . . . [citing cases in which the question arose between specific devises or bequests or pecuniary legacies and the residuary estate]. But if the burden of the tax is not to be borne by a bequest from the testatrix's own property, no reason appears why it should be borne by appointed property, which is not assets of her estate, but that of the donor of the power. . . . Although

by the terms of . . . [the] federal statute, appointed and other property not properly part of the estate is to be taken into account in measuring the amount of the tax, it is the estate itself which must bear the burden of the tax." The court held that, in the absence of any testamentary expression to the contrary, the "whole of the federal estate tax should be 'paid out of the testatrix's individual property not in trust, namely from the residue of the estate'" (pages 336–337).

According to the decisions cited, in the absence of a testamentary expression of intention to the contrary, in the present case the entire Federal estate tax measured by the net estate of the testatrix would have been payable out of the residue of her "own estate" — which was ample for the purpose. The burden of the entire Federal estate tax would have been cast upon the testatrix's "own estate," even though it was in part measured by appointive property. There was, however, a testamentary expression of intention to the contrary in clause 20 of the will providing that Federal estate taxes "levied or assessed against [that is, imposed upon] my [the testatrix's] estate" should be paid out of the residue of "my [the testatrix's] interest in my [the testatrix's] . . . mother's estate." We think that, in the state of the law as disclosed by the decisions cited, even interpreting — as we do — the words "my estate" in clause 20 of the will as referring to the testatrix's "own estate," the entire Federal estate tax here involved was "levied or assessed" against the testatrix's estate — that is, her "own estate" — within the meaning of clause 20 of the will, so that by this clause the entire Federal estate tax was required to be paid out of the residue of the estate of the testatrix's mother even though such tax was measured in part by appointive property. The dominant intention of the testatrix was to relieve her "own estate" from the burden of the Federal estate tax. It is difficult to conceive of any reason for the testatrix relieving her "own estate" from the burden of such tax so far as it was measured by her "own estate," and not also relieving her "own estate" from the burden of such tax so far as it

was measured by appointive property. We find nothing in the language of clause 20 or of the will as a whole indicating an intention on the part of the testatrix to differentiate in this respect between the part of the Federal estate tax measured by her "own estate" and the part thereof measured by appointive property. The conclusion that the entire Federal estate tax is payable from the residue of the testatrix's mother's estate is in conformity with the apparent intention of the testatrix to relieve her individual estate and the beneficiaries thereof from the burden of Federal estate taxes and is in conformity with the general scheme of the will. The judge of the Probate Court was right in ruling that the entire Federal estate tax was so payable.

It is unnecessary to consider whether a different result would be reached under St. 1943, c. 519, approved June 11, 1943, relating to the apportionment of estate taxes for this statute does not "apply to amounts paid as estate taxes . . . before the date on which the act becomes effective" (§ 2), and the Federal estate tax involved in these accounts was paid long before that date.

2. The "State Inheritance taxes" here involved were technically inheritance taxes within the meaning of clause 20 of the testatrix's will. By this clause it was provided that such taxes should be paid out of the residue of the estate of the testatrix's mother if they were "levied or assessed against [that is, imposed upon] my [the testatrix's] estate" within the meaning of this clause, that is, the testatrix's "own estate." The question, therefore, arises whether the "State Inheritance taxes" here involved were imposed upon the testatrix's "own estate." The record does not disclose precisely the successions upon which these taxes were imposed, but upon the basis of the will of the testatrix, and the amounts of the individual property of the testatrix and of the appointive property, it may fairly be assumed that the taxes here involved were in part imposed upon successions to individual property of the testatrix and in part upon appointive property.

Technically, Massachusetts inheritance taxes — unlike Federal estate taxes — are imposed upon the beneficiaries

and not upon the estates of the decedents whose property passes to such beneficiaries. *Smith* v. *Livermore*, 298 Mass. 223, 248. *Beals* v. *Magenis*, 307 Mass. 547, 549–550. However, such taxes are required to be paid by the administrators, executors or trustees of the estates of decedents, who are required to deduct such taxes from the property passing to the beneficiaries or to collect them from the beneficiaries. G. L. (Ter. Ed.) c. 65, §§ 6, 7, 17. St. 1907, c. 563, § 4, as amended by St. 1909, c. 527, § 2. But a testator may shift the burden of such taxes from the beneficiaries by making an adequate testamentary provision for the payment of such taxes. *Beals* v. *Magenis*, 307 Mass. 547, 550, and cases cited. We think that this was the purpose of the testatrix in making the provision in clause 20 of the will relating to "State Inheritance taxes"; that when she referred, in that clause, to "State Inheritance taxes . . . levied or assessed against my estate," she meant such taxes imposed upon beneficiaries succeeding to property of the estate. According to common understanding inheritance taxes imposed upon successions to property of an estate required to be paid by the administrators, executors or trustees thereof would naturally be regarded as imposed upon such estate even though technically they are imposed upon the beneficiaries respectively. It is more probable that the testatrix made her will in accordance with this common understanding than that she had in mind the technical legal situation. Moreover, an interpretation of clause 20 in accordance with the technical legal situation would render the clause without effect so far as it relates to "State Inheritance taxes," and a "construction which gives effect to all the language used is preferred to one which treats some as superfluous." *Hall* v. *Hall*, 209 Mass. 350, 353. Consequently the "State Inheritance taxes" imposed upon beneficiaries succeeding to the individual property of the testatrix — to property of her "own estate" — are within the scope of clause 20 of the testatrix's will. Such taxes were "levied or assessed against my [the testatrix's] estate" within the meaning of that clause, and the clause requires the payment of such taxes out of the residue of the estate of the testatrix's mother.

This interpretation of clause 20 of the testatrix's will as shifting the burden of "State Inheritance taxes" upon successions to property of the testatrix's "own estate" to the residue of the estate of the testatrix's mother is in conformity with the apparent intention of the testatrix to relieve her individual estate and the beneficiaries thereof from the burden of "State Inheritance taxes" and in conformity with the general scheme of the will. Indeed it is conceded that these taxes upon successions to the individual property of the testatrix are required to be paid out of the residue of the estate of the testatrix's mother.

The "State Inheritance taxes" imposed upon successions to appointive property stand somewhat differently. They were imposed neither upon the testatrix's "own estate" nor upon beneficiaries succeeding to property of her "own estate." They were imposed upon beneficiaries succeeding to the property of the testatrix's mother and the property of the testatrix's father respectively. *Ferguson* v. *Commissioner of Corporations & Taxation, ante,* 318. According to the reasoning herein applied to successions to property of the testatrix's "own estate," these taxes were "levied or assessed against" the estates of the testatrix's mother and the testatrix's father respectively. It is probable that under St. 1907, c. 563, § 4, as amended by St. 1909, c. 527, § 2 (see *Attorney General* v. *Stone,* 209 Mass. 186, 190–191; *Ferguson* v. *Commissioner of Corporations & Taxation, ante,* 318) these taxes were payable by the trustees under the wills of the testatrix's mother and the testatrix's father rather than by the executor of the will of the testatrix, except as he became liable therefor by receiving the appointive property or by agreeing with the trustees to pay such taxes. But we need not pursue the subject further. In any event, according to general principles, the taxes paid would be deductible from the property passing to the beneficiaries respectively, in the absence of any testamentary provision relieving such beneficiaries of the burdens of these taxes. Throughout the will the testatrix differentiated sharply between the property of her "own estate" and that of the estate of her mother and that of the estate of her father, notwithstanding her

broad power to dispose of the appointive property. As we construe clause 20 of the will, this differentiation was carried into said clause. We think it clear that the testatrix did not regard the appointive property as property of her "own estate" on the ground that such appointive property was distributable by the executor of her will, *Ferguson* v. *Commissioner of Corporations & Taxation, ante,* 318, and cases cited — a principle of law of which the testatrix may or may not have been aware. And we find no sound ground for attributing to the testatrix an intention to treat inheritance taxes upon successions to appointive property as taxes imposed upon her "own estate."

It is true that according to G. L. (Ter. Ed.) c. 65, § 2, if it had been effective — as it was held to be as late as January 2, 1936, after the date of the testatrix's will, November 29, 1933, by the decision in *Binney* v. *Commissioner of Corporations & Taxation,* 293 Mass. 96, a decision that was not reversed or modified until December 14, 1936, after the death of the testatrix on October 12, 1936, by *Binney* v. *Long,* 299 U. S. 280, 292–295 — the appointive property would have been treated for the purpose of inheritance taxation as the absolute property of the testatrix. But this statute, even if effective, would not transform such property into the property of the testatrix. *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600, 603. Nor would it render taxes upon successions thereto taxes imposed upon her "own estate" or upon beneficiaries succeeding to property of her "own estate." The presence of G. L. (Ter. Ed.) c. 65, § 2, upon the statute books at the date of the testatrix's will does not affect our conclusion already reached as to the intention of the testatrix with respect to inheritance taxes upon successions to appointive property. However, as was decided in *Ferguson* v. *Commissioner of Corporations & Taxation, ante,* 318, the taxes upon successions to the appointive property cannot be sustained under G. L. (Ter. Ed.) c. 65, § 2, but must be sustained under St. 1891, c. 425, and acts in amendment thereof and in addition thereto, as taxes upon successions to property of the estates of the testatrix's

mother and the testatrix's father. Such taxes were not imposed upon the testatrix's "own estate."

The testatrix's apparent purpose, as already pointed out, was to relieve her "own estate" and the beneficiaries succeeding to property thereof from the burden of "Federal and State Inheritance taxes." We see no indication of a similar intention to relieve the estates of the testatrix's mother and the testatrix's father and the beneficiaries succeeding to property thereof from the burden of such taxes.

It follows that Carl B. Ferguson is not required by clause 20 of the will to pay from the residue of the estate of the testatrix's mother appointed to him the "State Inheritance taxes" imposed upon successions to the appointive property. Of course this conclusion does not relieve said Carl B. Ferguson of any duty that he may have to pay, in the first instance, the inheritance taxes upon these successions. Nor does it relieve him of his personal obligation to pay such inheritance taxes upon appointive property passing to him beneficially. Moreover, since he is not required by clause 20 of the will to pay inheritance taxes upon successions to appointive property out of the residue of the estate of the testatrix's mother before the "balance" of such residue passing to him beneficially is determined, the amount of such "balance" so passing to him will be greater than if he had been required to pay such inheritance taxes out of such residue, and the inheritance tax on such "balance" for which said Carl B. Ferguson is liable personally will be correspondingly affected.

Second. As to "unpaid debts, expenses and charges of administration." In the absence of a testamentary provision relating to such items they are to be paid respectively out of the particular estate — the testatrix's estate, the estate of her mother, or the estate of the testatrix's father — to which they relate. We do not discuss the several items in detail. The debts of the testatrix are to be paid out of her "own estate," and property appointed by her cannot be used for the payment of such debts, since her individual estate is sufficient to pay them. *Loring* v. *Wilson*, 174 Mass.

132, 143. *Tuell* v. *Hurley,* 206 Mass. 65, 68. *Butler* v. *New England Trust Co.* 259 Mass. 39, 45. And this is true of the expenses of administering the estate of the testatrix (*Tuell* v. *Hurley,* 206 Mass. 65, 67), but "any expenses arising out of the administration of the property subject to the power[s] will be borne by that property." *Slayton* v. *Fitch Home, Inc.* 293 Mass. 574, 580.

There is no testamentary provision relating to such items apart from the provision in clause 20 of the will providing for the payment by Carl B. Ferguson from the residue of the testatrix's mother's estate of "all unpaid debts, expenses and charges of administration if there should be insufficient funds in my own estate." But this provision has no application in view of the facts reported. The funds in the testatrix's "own estate" are sufficient to pay "all unpaid debts, expenses and charges of administration" whether this language refers to such items ordinarily chargeable to the three estates, ordinarily chargeable to the testatrix's "own estate" only, or ordinarily chargeable to the testatrix's "own estate" only that could be paid from her "own estate" without depleting any of the gifts therefrom, other than the residuary gift.

One of the beneficiaries urges that the part of the provision of clause 20 relating to these items that limits the application of the provision to a situation in which there is an insufficiency of assets should be disregarded because inconsistent with the dominant purpose of the testatrix as disclosed by the will as a whole. But we are of opinion that the will falls far short of disclosing a dominant purpose inconsistent with the express limitation justifying disregard of this limitation. On the other hand, the limitation of the provision for the payment of "unpaid debts, expenses and charges of administration" to a situation where there is an insufficiency of assets does not justify the inference that all such items, irrespective of the estate to which they ordinarily would be chargeable, should be paid out of the testatrix's "own estate" if it is sufficient for the purpose.

The interpretation here given to the provision of clause 20 relating to "unpaid debts, expenses and charges of adminis-

tration" is the natural interpretation of the language. It does not render that provision unreasonable. The purpose of the testatrix conceivably may have been to protect the gifts of her individual property from being reduced by "unpaid debts, expenses and charges of administration" or to provide that, if it became necessary to resort to appointive property for the payment of "unpaid debts, expenses and charges of administration" payable from her "own estate" if it was insufficient for the purpose, resort should be had to the estate of her mother rather than to the estate of her father, which was appointed to the testatrix's sister-in-law for her life.

We conclude that "unpaid debts, expenses and charges of administration" are to be paid from the funds from which they would have been payable if the will had contained no provision relating to the subject. The facts reported by the judge of probate do not disclose whether he was right in ruling that all these items were payable from the residue of the testatrix's "own estate."

The case is remanded to the Probate Court for the entry of appropriate decrees in conformity with the principles here stated. Costs and expenses of this appeal may be allowed in the discretion of that court from the residue of the testatrix's interest in her mother's estate — which is the fund in controversy.

*Ordered accordingly.*