COUNTY OF BRISTOL & others *vs.* SECRETARY OF THE COMMONWEALTH & another.

Suffolk.     April 4, 1949. — June 9, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Public Record.     Registry of Deeds.*

The supervisor of public records under G. L. (Ter. Ed.) c. 66, § 1, as amended by St. 1945, c. 580, § 7, has power to require a register of deeds employing the photographic process of recording instruments to make a copy for keeping in safe storage in addition to the copy made for the use of the public.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on April 7, 1948.

The case was reserved and reported, without decision, by *Ronan,* J.

*M. M. Horblit,* (*M. H. Horblit & S. H. Kalish* with him,) for the petitioners.

*H. P. Fielding,* Assistant Attorney General, for the respondents.

RONAN, J.   This petition for a writ of mandamus by the county of Bristol and the county commissioners of said county is brought against the Secretary of the Commonwealth and the supervisor of public records, alleging that since March 1, 1947, the recording of deeds and other instruments at the three registries of deeds in said county has been done by the photographic method by which a photograph of an instrument, or a negative, so called, is made and bound with photographs of other instruments into a book which is open to public inspection; that this method has supplanted that of making and binding typewritten copies of recorded instruments; that the photographic process of recording is more accurate, speedier, and far less expensive than the typewritten method of recording;

County of Bristol *v.* Secretary of the Commonwealth.

and that the respondents have notified the commissioners that "a positive record must be made from the negative for the use of the public." Within two days after the filing of the petition the commissioners were notified that this previous order had been modified so that, in addition to the copy of the record used by the public, "there should be another copy made, either a positive or negative or microfilm, which second copy should be kept in safe storage at all times, so that if anything happens, either by fading or destruction of the public used record, another copy can be made." We shall refer to this second copy as an additional photographic copy. The petitioners seek the writ to rescind such order and to restrain the respondents from enforcing it.

The parties have stipulated that the only issue is whether the respondents or either of them was authorized under G. L. (Ter. Ed.) c. 66, § 1, as amended by St. 1945, c. 580, § 7, to require the registers of deeds in said county, who now employ the photographic process of recording instruments (G. L. [Ter. Ed.] c. 66, § 3, as appearing in St. 1941, c. 662, § 1), to make an additional copy. We take the case as presented by the parties and confine our discussion strictly to this issue.

The books containing the written, typed or photographic copies of the instruments which are required to be recorded at a registry of deeds and which are open to the inspection of the public, G. L. (Ter. Ed.) c. 66, § 10, are necessary and essential in our system of recording titles and interests in land. The parties agree that those books containing photographic copies are public records within the statutory definition, G. L. (Ter. Ed.) c. 4, § 7, Twenty-sixth, which expressly includes "public records made by photographic process as provided in section three of said chapter [66]."

The supervisor of public records "shall take necessary measures to put the records of the commonwealth, counties, cities or towns in the custody and condition required by law and to secure their preservation." G. L. (Ter. Ed.) c. 66, § 1, as amended by St. 1945, c. 580, § 7. The records at the three registries of deeds in Bristol County are properly

in the custody of the registers of deeds and kept in their respective registries in accordance with G. L. (Ter. Ed.) c. 36, § 11, as appearing in St. 1947, c. 449, § 2. The records at these registries are made by the photographic method of materials approved by the supervisor of public records, by equipment so approved; and the photographic copies are of recognized standard quality, capable of producing true, exact and clear copies. It is not argued that the method employed in recording instruments at these registries is not in accordance with G. L. (Ter. Ed.) c. 66, § 3, as appearing in St. 1941, c. 662, § 1; or that the records are not in the condition required by law. The whole controversy turns upon the question whether the authority conferred upon the supervisor to take necessary measures to secure the preservation of the records includes the power to require the making of an additional copy which is to be kept in some safe place of storage so that, if anything happens to the publicly used record, another copy may be supplied.

The petitioners point to various statutes dealing with the safe keeping of records in the custody of a State, county or municipal officer, G. L. (Ter. Ed.) c. 66, §§ 9, 11, 12, and contend that the authority conferred upon the supervisor in this respect extends no farther than to see that the provisions of these statutes are observed. Each of these statutes provides a means for the protection of public records, but they do not purport to cover this subject completely or exclusively, or preclude the adoption of other measures which may be deemed reasonably necessary for the preservation of the records for the promotion of the public welfare. A purchaser of real estate seldom has the original deeds in his chain of title but usually has only the deed of his grantor. The validity of the title of the latter having been shown by an examination of the records and relied upon by the purchaser in acquiring the land, the destruction of these records may leave the purchaser's title open to attack. The confusion and uncertainty which result from a destruction of the records are illustrated by the situation which prevailed after the great Chicago fire of 1871 and the San Francisco

earthquake and fire of 1906. See *American Land Co.* v. *Zeiss*, 219 U. S. 47; *Title & Document Restoration Co.* v. *Kerrigan*, 150 Cal. 289; *Smith* v. *Stevens*, 82 Ill. 554; *Bertrand* v. *Taylor*, 87 Ill. 235.

The petitioners also point to the fact that G. L. (Ter. Ed.) c. 66, § 3,[1] as appearing in St. 1941, c. 662, § 1, speaks of "the photographic print" and "a photographic . . . record," and argue that these words constitute legislative recognition of the established custom and general practice of making only one photographic copy in recording instruments and further indicate that not more than one copy is to be made. The quoted words do not support that conclusion. They are couched in the singular, as they must necessarily be in referring, as they do, to a particular instance where the photographic copy is illegible or indistinct, in which case the photographic copy is to be supplemented by a typewritten copy. It is next argued that the express mention of this particular mode of recording excludes by implication any legislative intent to require an additional photographic copy in any other instance. It is a familiar

---

[1] "The word 'record' in this chapter shall mean any written or printed book or paper, or any photograph, microphotograph, map or plan. All written or printed public records shall be entered or recorded on paper made of linen rags and new cotton clippings, well sized with animal sizing and well finished, and preference shall be given to paper of American manufacture marked in water line with the name of the manufacturer. All photographs, microphotographs, maps and plans which are public records shall be made of materials approved by the supervisor of records. Public records may be made by handwriting, or by typewriting, or in print, or by the photographic process, or by the microphotographic process, or by any combination of the same. When the photographic or microphotographic process is used, the recording officer, in all instances where the photographic print or microphotographic film is illegible or indistinct, may make, in addition to said photographic or microphotographic record, a typewritten copy of the instrument, which copy shall be filed in a book kept for the purpose. In every such instance the recording officer shall cause cross references to be made between said photographic or microphotographic record and said typewritten record. If in the judgment of the recording officer an instrument offered for record is so illegible that a photographic or microphotographic record thereof would not be sufficiently legible, he may, in addition to the making of such record, retain the original in his custody, in which case a photographic or other attested copy thereof shall be given to the person offering the same for record, or to such person as he may designate. Subject to the provisions of sections one and nine, a recording officer adopting a system which includes the photographic process or the microphotographic process shall thereafter cause all records made by either of said processes to be inspected at least once in every three years, correct any fading or otherwise faulty records and make report of such inspection and correction to the supervisor of records."

principle of statutory interpretation that the express mention of one matter excludes by implication all other similar matters not mentioned. *McArthur Brothers Co.* v. *Commonwealth,* 197 Mass. 137, 139. *Boston & Albany Railroad* v. *Commonwealth,* 296 Mass. 426, 434. The principle is one of construction and not of substantive law. It is applicable only where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was not intended to be included within the sweep of the statute. Here the statute directs the register of deeds to employ a designated method of recording in the specific instance where a photographic copy is illegible or indistinct. Even in that instance the statute makes no mention of any additional photographic copy. Nothing in the statute touches the matter of any such additional copy. The statute merely authorizes the use of the photographic process as a method of recording, and nowhere does it provide for any definite steps to be taken by the register in employing this method excepting only in the case where the photographic copy is illegible or indistinct. The mention of a definite method in a specific case does not negative an inference that in all other instances an additional photographic copy should be made if in the reasonable judgment of the one charged with the duty of preserving the records additional copies should be made. General Laws (Ter. Ed.) c. 66, § 3, as appearing in St. 1941, c. 662, § 1, authorizes the employment of three different methods of recording instruments, but does not affect the power of the supervisor to require additional measures reasonably calculated to safeguard the records. The principle of construction urged by the petitioners cannot be adopted. There is nothing in said § 3 which expressly or by implication prevents the supervisor from making the order in question. *Simmons* v. *County of Suffolk,* 230 Mass. 236. *Universal Machine Co.* v. *Alcoholic Beverages Control Commission,* 301 Mass. 40, 44, 45. *Boston Elevated Railway* v. *Commonwealth,* 310 Mass. 528, 565, 566.

As said § 3 provides for the periodic inspection by the

recording officer of all photographic records and the correction of fading or otherwise faulty records and that he should make a report of such inspection and correction to the supervisor, it is urged that this is all that the Legislature intended in this respect to safeguard the records. Inspection by the register cannot be construed as a limitation of the power of the supervisor to preserve the records.

The various statutes upon which the petitioners rely, whether considered singly or collectively, do not comprise a comprehensive and inclusive legislative plan for the recording and preservation of the records kept at the registries of deeds, as did the statutes involved in *School Committee of Lowell* v. *Mayor of Lowell,* 265 Mass. 353, 356, 357, and *Wyatt* v. *Boston Consolidated Gas Co.* 319 Mass. 251, 252, but they all have a common object which they seek to accomplish by dealing with different aspects of the same subject matter without in any way superseding or limiting other statutes dealing with different phases of the general subject. *Inspector of Buildings of Falmouth* v. *General Outdoor Advertising Co. Inc.* 264 Mass. 85. *Marchesi* v. *Selectmen of Winchester,* 312 Mass. 28, 31. *Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 281.

The case is distinguishable from *People* v. *Hass,* 311 Ill. 164, and *Bennington* v. *Booth,* 101 Vt. 24, upon which the petitioners rely, for in those cases the statutes went no farther than to impose a general duty upon a public officer to record certain instruments and no statute was involved conferring upon a State officer the authority granted by our statute to the supervisor of public records.

We cannot say that the requirement of an additional copy is not a reasonably necessary measure for the preservation of the records of a registry of deeds, and we cannot substitute our judgment for that of the official to whom the Legislature has entrusted the matter.

*Petition dismissed.*