RUPPRECHT R. SCHERFF, executor, *vs.* MARGARETHE SILINSKI & others.

Hampden. December 6, 1963. — January 13, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Devise and Legacy,* Taxes.

Under a will providing that a café corporation should redeem its note to the testatrix "for the purpose of affording liquidity to . . . [her] estate . . . for paying . . . estate and inheritance taxes" and "In the event that it . . . [should] become necessary to raise further cash for the payment of death taxes" the corporation should redeem stock in it held by the testatrix "in order to provide such cash," that certain "specific and pecuniary legacies and devises" should "not be diminished by the payment of any inheritance, estate or succession taxes and that all such taxes . . . [should] be paid from other assets of . . . [the] estate," without designating such other assets, and that "In order to provide money for the payment of . . . taxes" the corporation should "redeem such of its shares . . . as may be necessary to provide funds for such purposes," and in view of an inoperative provision directing the payment of "all inheritance and estate taxes . . . out of the . . . residue" in an event which did not occur, the proceeds of the redemption of the corporate note and of the stock, if necessary, should be applied, before use of the general assets of the estate, to payment of the Massachusetts inheritance taxes on such "specific and pecuniary legacies and devises" and payment of the Federal estate tax; the Massachusetts inheritance taxes respecting a trust of all the testatrix's stock in the corporation created by the will should be paid from redemption of the shares or by the beneficiaries of the trust; and the Massachusetts inheritance taxes on the residue should be paid by the recipients thereof in accordance with the normal burden of such tax.

PETITION for instructions filed in the Probate Court for the county of Hampden on March 8, 1962.

The case was reported by *Stapleton, J.*

*Henry A. Moran, Jr.*, stated the case.

*William E. Hays* (*William C. Hays & James D. Monteith*, of North Carolina, with him) for the respondents Henrietta Moran Dowd & another.

*Emerson S. Searle* for the respondents Margarethe Silinski & another.

CUTTER, J.   This is a petition by the executor of the will of Erna P. Sievers, who died May 10, 1961, for instructions concerning what portion or portions of the testatrix's estate should bear the burden of Federal estate taxes and State inheritance taxes.   There is no dispute about the facts, which are established by the pleadings.   The probate judge reported the case, without decision, for the consideration of the full court.

The testatrix by her will (arts. Second to Twentieth, inclusive) made various devises and bequests, including gifts to each of the café employees mentioned below and to each of the residuary legatees.   Articles Twenty-first and Twenty-second are not relevant.   She then (art. Twenty-third) bequeathed to one Downey, as trustee, her "collection of steins, china and music boxes" and all her shares of the capital stock of Student Prince Café, Inc. of Springfield (the café), in trust under somewhat complicated provisions, which need not be stated in complete detail,[1] for the benefit

---

[1] By way of rough summary it may be said that the trustee was directed to operate the restaurant for ten years, keeping the café employees in their respective positions.   At the end of ten years, the trustee, if of opinion that the café employees were competent to conduct the restaurant, was to transfer the trust property to the café employees or to the survivor of them.   Otherwise he was to transfer the trust property to the testatrix's niece and to her nephew, or to the survivor of them (with substitutional gifts to their respective issue).   The trustee was also given discretionary power to sell the shares if he thought it unwise to continue the restaurant business "because of the lack of attention to the . . . business on the part of" either of the café employees. In that event, also, the proceeds were to go to the niece and nephew.   By a codicil, however, the possibility that the café employees would actually receive the trust corpus was made somewhat less contingent by providing (1) that if the named trustee should predecease the testatrix, the café employees would take the trust shares outright, and (2) that, if the named trustee should die while administering the trust, Scherff would become trustee charged with distributing the trust shares forthwith.

of Rupprecht R. Scherff and Margarethe Silinski (herein-
after called the café employees) who had been employed by
her in the café. The residue (art. Twenty-fourth) was left
in equal shares to the testatrix's niece Mrs. Dowd and to
her nephew John Sievers Moran.

After payment of her debts and funeral expenses, the
testatrix provided (art. First), "I desire that my execu-
tor require the Student Prince Café, Inc. . . . redeem its
[$15,000] note to me . . . this redemption being for the
purpose of affording liquidity to my estate both for paying
legacies and estate and inheritance taxes. *In the event that
it shall become necessary* to raise further cash for the pay-
ment of death taxes and the expense of administration, then
and in that event, I direct my executor to cause the . . .
[c]afé . . . to purchase or redeem such shares of its stock
as I may hold at the time of my death, in order to provide
such cash" (emphasis supplied). By art. Twenty-fifth, she
directed "that all specific and pecuniary legacies and de-
vises provided for by paragraphs 2–22 shall not be dimin-
ished by the payment of any inheritance, estate or succes-
sion taxes and that all such taxes shall be paid *from other
assets of my estate*" (emphasis supplied). Article Twenty-
sixth reads in part, "In order to provide money for the pay-
ment of debts, taxes and expense of administration, I di-
rect my executor to cause the . . . [c]afé, . . . to redeem
such of its shares . . . as may be necessary to provide
funds for such purposes, and only as a last resort shall any
of said shares be sold to third parties."[2]

A further provision of the will which must be considered
is art. Twentieth, by which the testatrix left to her half
brother Albert, who predeceased her, "all of my bank ac-
counts, bonds and stock certificates, wheresoever located ex-

---

[2] Article Twenty-sixth continues, in part, "Inasmuch as I am the owner of
51 of the 52 shares . . . outstanding, of . . . [the] [c]afé . . . I . . . direct
. . . [my] executor to retain all . . . shares except such as shall be redeemed
by said corporation for the purpose above mentioned, until the same shall be
distributed to the [t]rustee named in this will, and during said period of time,
while my executor retains such stock, I direct him to cause said corporation to
employ, as its manager . . . the [t]rustee named in this will."

cept . . . [certain] bonds . . . and . . . [the] stock certif-
icates of the . . . [c]afé . . . . But in the event that the
said Albert . . . predeceases me then I give . . . all of my
said bank accounts, bonds and stock certificates, whereso-
ever located, except the [specified] bonds . . . and . . .
[the] stock certificates of the . . . [c]afé" to Mrs. Dowd
and Moran "in equal shares, but if they not survive me then
to their issue in equal shares per stirpes . . . . *In the
event Albert . . . receives the aforementioned bank books,
I direct all inheritance and estate taxes be paid out of the
. . . residue . . . of my estate*" (emphasis supplied).

The café employees contend that, for the payment of
debts, expenses, and. death taxes, the executor must first
exhaust all the general assets of the estate before resorting
to redemption of any of the café's capital stock. Mrs. Dowd
and Moran contend that the provisions of the will, espe-
cially arts. First, Twenty-fifth, and Twenty-sixth, make it
clear that, first, the proceeds of the $15,000 café corporation
note must be used, so far as the proceeds will go, for money
legacies, debts, expenses, the Federal estate tax appor-
tioned to the probate estate, and the State inheritance taxes
with respect to the property dealt with in arts. Second to
Twenty-second, inclusive, and that thereafter these items
must be paid from the proceeds of the redemption of shares
of the café stock.[3]

1. Article Twenty-fifth establishes that the gifts made
in arts. Second to Twenty-second, inclusive, are not to be
diminished by any estate or inheritance taxes. This ex-
plicit direction by the testatrix relieves these bequests and

---

[3] At the arguments, counsel stated that there was no present controversy
about the following matters upon which the parties have now agreed, viz.
(1) the proceeds of the $15,000 note were made available by art. First, not only
to maintain the "liquidity" of the estate, but also for use to pay money lega-
cies and death and estate taxes; (2) the gift made by art. Twentieth is a
specific legacy; and (3) the proceeds of a life insurance policy and certain
other property, not part of the probate estate, must bear the burden of any
State inheritance taxes imposed with respect to such proceeds and property
and the burden of a proper apportionment of the Federal estate tax, made as
provided in G. L. c. 65A, § 5 (as amended through St. 1948, c. 605, § 1). We
thus have no occasion to discuss these issues in detail, although the substance
of the parties' agreement is to be stated in the decree, as hereinafter provided.

legacies of all such taxes. Accordingly, such taxes must
be paid (a) from the proceeds of the $15,000 note, or (b)
from the redemption of shares of the café stock or (c) from
general assets of the estate not bequeathed by arts. Second
to Twenty-third.

2. In the absence of any direction by the testatrix the
burden of State inheritance taxes upon each testamentary
gift would be borne by the recipient of that gift. See
*McLaughlin* v. *Codman,* 332 Mass. 514, 519; Newhall, Settle-
ment of Estates (4th ed.) §§ 159, 160. See also G. L. c. 65,
§§ 6, 7 (as amended through St. 1957, c. 429, § 1), 17, 18.
The language of art. Twenty-fifth, although it relieves from
this tax the gifts made in arts. Second to Twenty-second,
does not itself designate what other assets of the estate are
to bear this tax burden. The Federal estate tax is assessed
on the gross estate of the testatrix after certain deductions.
See *Buffinton* v. *Mason,* 327 Mass. 195, 198–199; *McLaugh-
lin* v. *Codman, supra,* at p. 519; Newhall, Settlement of Es-
tates (4th ed.) §§ 163, 164. The parties' agreement (see
fn. 3, *supra*) shows that the estate tax apportioned under
G. L. c. 65A, § 5, as amended, to the insurance proceeds and
other property passing outside the will, will be borne by the
recipients of those items. "[E]xcept as otherwise pro-
vided or directed by the will," however, the Federal estate
tax properly apportionable to the probate estate would be
borne by the "general funds" of the testatrix's estate,
thus reducing the residue. See G. L. c. 65, § 5, par. 1, as
amended; *Weingartner* v. *North Wales,* 327 Mass. 731, 734–
735. "[T]he testatrix had the right to shift the burden of
[each of] those taxes as she saw fit." *Malden Trust Co.* v.
*Bickford,* 329 Mass. 567, 569.[4]

Although an exception to general rules of apportionment
of death taxes and allocating their burden is not lightly to

---

[4] For further cases dealing with shifting the burden of death taxes and their
apportionment, see *Ferguson* v. *Massachusetts Audubon Soc.* 316 Mass. 436;
*Merchants Natl. Bank* v. *Merchants Natl. Bank,* 318 Mass. 563, 576–577;
*Isaacson* v. *Boston Safe Deposit & Trust Co.* 325 Mass. 469, 474; *Whitbeck* v.
*Aldrich,* 341 Mass. 326, 328–330. See also *Warfield* v. *Merchants Natl. Bank,*
337 Mass. 14, 17–21; *Cloutier* v. *Lavoie,* 343 Mass. 125, 128.

be inferred (see *Merchants Natl. Bank* v. *Merchants Natl. Bank,* 318 Mass. 563, 577), the directions of art. First with respect to the $15,000 note and the café shares seem to us explicit. The testatrix states her desire that the note be liquidated to pay legacies and death taxes, and that, if "it shall become necessary to raise further cash for . . . death taxes and the expense of administration," she directs redemption of the café shares "to provide such cash." The most obvious reference intended by the words, "in the event that it shall become necessary to raise further cash," is to the preceding sentence, that is, the words mean merely "if the proceeds of the $15,000 note are insufficient." It would be a strained construction of the language to treat the words as meaning, in effect, "after the exhaustion of general assets of the estate not specifically devised or bequeathed." Accordingly, although the provision is not as clear as the language considered in some earlier cases (see e.g. *Whitbeck* v. *Aldrich,* 341 Mass. 326, 327), we interpret art. First, standing alone, as a direction that monetary legacies (which the testatrix knew to be only $9,000 in all) and death taxes payable by the probate estate are to be paid from the proceeds of the $15,000 note, so far as these proceeds will go, and, to the extent that they are insufficient, such taxes and expenses of administration are to be paid from the proceeds of redeeming café shares. This interpretation of art. First is reinforced by the somewhat more inclusive provisions of art. Twenty-sixth which directs redemption of café shares "to provide money for the payment of debts, taxes and expense of administration."

The only direct statement that any taxes are to be paid "out of the . . . residue of" the estate (i.e. out of the general assets before the amount of the residue is determined) is the last sentence of art. Twentieth. Since Albert Sievers died before the testatrix, this sentence never had operative effect. It may be considered, however, in determining the testatrix's intention. The sentence shows that the draftsman knew how to impose a tax burden on the general estate (thus reducing the residue) if he wished to do so.

Although the provisions of the articles which have just been discussed are somewhat repetitive and confused, we think their necessary import is a testamentary direction that all death and estate taxes with respect to the property passing under arts. Second to Twenty-second be paid out of the proceeds of the $15,000 note and of the redemption of the café shares. The intention, however, with respect to taxes on the trust's café shares and other assets (art. Twenty-third) and on the residue (art. Twenty-fourth) is somewhat less clear. In the absence of any contrary direction by the testatrix, the State inheritance tax on the trust property would rest on the trust shares. See *Ferguson* v. *Massachusetts Audubon Soc.* 316 Mass. 436, 447–448. The same result will follow if this tax on the trust fund is held to be payable from proceeds of redeemed shares by virtue of arts. First and Twenty-sixth. Article Twenty-fifth plainly does not change this result for it refers only to the gifts in arts. Second to Twenty-second. The State inheritance tax on the trust shares not redeemed in any event must be paid out of the proceeds of those shares redeemed.

As already stated, the Federal estate tax with respect to the trust shares would be paid out of the general estate, in the absence of a contrary testamentary provision. Articles First and Twenty-sixth themselves make no distinction between taxes payable by the probate estate on the gifts made in arts. Second to Twenty-second, inclusive, and those on the gifts made in arts. Twenty-third and Twenty-fourth. The juxtaposition of art. Twenty-fifth and art. Twenty-sixth, however, affords some basis for the contention that art. Twenty-sixth provides only for the payment of the Federal estate tax with reference to the property passing under arts. Second to Twenty-second, which has just been mentioned. We think that, in the light of the broad language of art. Twenty-sixth, this juxtaposition is not significant and that the direct liability of the estate itself for all the Federal estate tax apportioned to the probate estate (including the portion of that tax caused by the residue) must be paid from the proceeds of the $15,000 note and of the redemption of café shares, so far as they are sufficient.

With respect to the Massachusetts inheritance tax upon the residuary gift (art. Twenty-fourth) the breadth of the language of arts. First and Twenty-sixth might permit the same result.   Nevertheless, the State inheritance tax on the residue is unlike the Federal estate tax which is a direct liability of the estate.   The burden of the inheritance tax on the residue (which, of course, is severable from the inheritance tax on other interests) normally would be borne by the recipients of the residue.   Article Twenty-fifth does not purport to relieve the residuary gift of the inheritance tax.   That it relieves the gifts made earlier in the will from inheritance taxes suggests that inheritance taxes on other interests, which are not to be paid as an estate liability, must be borne by the persons on whom they would normally fall.   We hold that the State inheritance tax with respect to the residue is to be borne by the recipients of the residue.

3.   A decree is to be entered in the Probate Court making the following declarations.   (a) In accordance with the agreement of the parties at the arguments, it is to be declared (1) that the bequest in art. Twentieth is a specific legacy which receives the benefit of arts. Twenty-fifth and Twenty-sixth of the will, and (2) that State inheritance taxes with respect to the proceeds of the life insurance policy and to certain other property passing outside the will are to be borne by the recipients of such property, respectively, and that a proper apportionment of the Federal estate tax is to be made to, and be borne by, such property in accordance with G. L. c. 65A, § 5 (as amended through St. 1948, c. 605, § 1).   (b) It is also to be declared (1) that the proceeds of the $15,000 note of the café are to be applied, first, to the payment of monetary legacies and then to the payment of State inheritance taxes on the property passing by arts. Second to Twenty-second and of the estate's liability for the Federal estate tax apportioned to the property passing by the will; (2) that any balance of such apportioned part of the Federal estate tax is to be paid from the proceeds of the redemption of café shares; (3) that the Massachusetts inheritance taxes with respect to the

gifts and provisions in arts. Second to Twenty-second, inclusive, are to be paid from the proceeds of the redemption of café shares (to the extent that the proceeds of the $15,000 note are insufficient); (4) that the Massachusetts inheritance tax with respect to the trust gift is to be paid from proceeds of trust shares redeemed or by the beneficiaries of the trust; (5) that the Massachusetts inheritance tax with respect to the residue is to be paid therefrom or by the recipients of the residue; (6) that debts and expenses of administration are to be paid from the proceeds of the redemption of café shares; and (7) that, if the proceeds of the $15,000 note and of the redemption of café shares are insufficient to pay (A) the Federal estate tax with respect to property passing by the will, (B) the debts, (C) the expenses of administration, (D) the monetary legacies, and (E) the Massachusetts inheritance tax with respect to the gifts and provisions under arts. Second to Twenty-second, inclusive, then resort is to be had to the general assets of the estate not required for the gifts in arts. Second to Twenty-third, inclusive. Costs and expenses in this court and in the Probate Court are to be in the discretion of the Probate Court.

*So ordered.*