THE FIRST NATIONAL BANK OF BOSTON, trustee, vs.
JUDGE BAKER GUIDANCE CENTER & others
(and two companion cases[1]).

Suffolk. Norfolk: October 14, 1981. — February 5, 1982.

Present: GREANEY, PERRETTA, & KASS, JJ.

Taxation, Apportionment of tax burden, Estate tax. *Executor and
Administrator*, Taxes. *Trust*, Taxes, Distribution.

Where a testator's instruments were silent on the matter of apportion-
ment of estate taxes among the beneficiaries of each portion of her
estate, G. L. c. 65A, § 5, required nontaxable charitable residuary
shares of the probate estate and of two inter vivos trusts, which were
included in the decedent's estate for estate tax purposes, to contribute
to the payment of estate taxes owing on account of the preresiduary
and residuary taxable shares of the probate estate and trusts. [148-155]
A testator's intention to make a fractional share gift of her property held
in trust was manifest from the instrument itself, and the gift of "one-
third (1/3) of the trust property held by [the trustee] on the day of the
Donor's decease," was a fractional share gift which participated in
fluctuations in the value of the trust property after the donor's death.
[155-157]

CIVIL ACTIONS commenced in the Suffolk Division of the
Probate and Family Court Department on August 15, 1977,
and July 19, 1978, respectively, and in the Norfolk Division
on April 1, 1981.

Questions of law were reported by *Yasi*, J., and *Ford*, J.

*Eric F. Menoyo* for The First National Bank of Boston &
another.

*Charles J. Kickham, Jr.* (*James M. Kickham* with him)
for Estelle McGrail & others.

---

[1] State Street Bank and Trust Company, trustee, vs. Estelle McGrail, &
others, and State Street Bank and Trust Company, executor, vs. Lispen-
ard B. Phister, executor, & others.

*Stephen W. Howe,* pro se.

*Ira K. Gross (Joseph C. Robbins* with him) for Lispenard B. Phister.

*William T. Loomis (James B. Ames* with him, for Massachusetts General Hospital & another, *William N. Swift,* for Children's Hospital Medical Center, & *Kevin A. Suffern,* Assistant Attorney General, for Attorney General, also with him).

PERRETTA, J.   Upon reports from Probate Court judges pursuant to G. L. c. 215, § 13, we are asked two questions: (1) whether, where the testator's instruments are silent, G. L. c. 65A, § 5, as appearing in St. 1975, c. 684, § 73,[2] requires nontaxable charitable residuary shares of a probate estate and of two inter vivos trusts, which are included in a decedent's estate for estate tax purposes, to contribute to the payment of estate taxes owing on account of the pre-residuary and residuary taxable shares of the probate estate and trusts; and (2) whether a gift of "one-third (⅓) of the trust property held by . . . [the trustee] on the day of the Donor's decease," is a fractional share gift which participates in fluctuations in the value of the trust property after the donor's death? We answer both questions, "Yes."

Rosamond Hunt (Rosamond) died on December 30, 1976, and her will, dated June 11, 1963, was admitted to probate on March 20, 1977.[3]   Included in her estate for estate tax purposes were assets of two trusts created by Rosamond during her lifetime and certain property over which she exercised a testamentary power of appointment.   The power of appointment was created by a codicil to the will of Rosamond's mother, Frances Emily Hunt (Frances), the terms of which were as follows.   Frances left the residue of her probate estate in trust, the income of which was to be

---

[2] Subsequent amendments to § 5, St. 1976, c. 415, § 88, and St. 1976, c. 515, § 1, have no relevance to the questions here under consideration.

[3] Imposition of a tax by Massachusetts on the transfer of an estate, in lieu of an inheritance tax, was effected by St. 1975, c. 684, § 74. By § 97 thereof the State estate tax is applicable "to estates of decedents dying on or after January first, nineteen hundred and seventy-six."

paid to Rosamond during her lifetime. Upon Rosamond's death, the trustee was "to pay, transfer and convey the entire trust property . . . in such proportion as my said daughter shall by her last will appoint, but in default of appointment, to her issue in equal shares per stirpes and not per capita." The codicil further provided that should Rosamond "decease without issue," the property was to be distributed to various charities.

For estate tax purposes, Rosamond's estate has been valued at $4,322,400, and substantial portions of that amount are subject to distribution in accordance with the terms of Rosamond's trusts and the power of appointment, which she exercised in her will. Under the terms of her will and trusts, her principal beneficiaries are Estelle McGrail (Rosamond's adopted daughter), McGrail's three children, Laurence Bunker (Rosamond's second cousin), whose interests are now represented by his executor, and three charities: the Baker Memorial of the Massachusetts General Hospital, the Children's Hospital Medical Center, and the President and Fellows of Harvard College, collectively referred to herein as "the charities."

The lion's share of Rosamond's probate estate, including the property over which she exercised the power of appointment, was disposed of through her residuary clause, which provides that Laurence Bunker is to receive "one-third (⅓) of said residue" and that the charities are to receive "two-thirds of said residue, in equal shares.[4] The material dis-

---

[4] To resolve questions which arose concerning the nature of the power of appointment, the parties entered into a stipulation, which was approved by a Probate Court judge and which provides that sixty percent of the property subject to the power "is to be disposed of as if Rosamond Hunt had a general power exercisable in all events and forty percent *as if she did not have such a power*" (emphasis supplied). Accordingly, sixty percent of the property subject to the power is disposed of under the terms of the residuary clause of Rosamond's will, passing to Laurence Bunker and the charities. Thus, the remaining forty percent is not pertinent to this case, but we note that the Probate Court judge ruled, and the parties agreed, that "Rosamond Hunt died without issue and that neither Estelle McGrail nor any of her issue have any interest" in this property.

positive clause of The First National Bank of Boston Trust, created by Rosamond on October 20, 1945, and amended on December 2, 1957, directs that upon Rosamond's death, certain specific legacies of the trust property be made, that the trustee "set aside one-third (⅓) of the trust property held by it on the day of the Donor's decease" for Estelle McGrail, in trust, that "one third (⅓) of the trust property held by it on the day of the Donor's decease" be "distribute[d]" to Laurence Bunker, and that the "trustee shall distribute the rest, residue and remainder of the trust property held by it on the day of the Donor's decease" to the charities, in equal shares. The State Street Bank and Trust Company Trust, also created and amended on October 20, 1945, and December 2, 1957, respectively, and again amended on June 7, 1962, provides that upon Rosamond's death, certain specific legacies of the trust property be made, including one in trust for the benefit of Estelle McGrail and her issue, and that the trustee distribute one-third of "the rest, residue, and remainder of the trust property" to Laurence Bunker and "two-thirds (⅔) of said residue, in equal shares," to the charities. To capsulize: Estelle McGrail is a preresiduary legatee under the will[5] and a preresiduary beneficiary of both trusts, Laurence Bunker is a preresiduary beneficiary of The First National Bank of Boston Trust and a residuary beneficiary under the will and under the State Street Bank and Trust Company Trust, and the charities are residuary beneficiaries under all three instruments.

Rosamond's instruments also contain tax provisions. In her will she directed that "any inheritance and federal estate taxes due upon property passing under the provisions of this will . . . shall be paid from the residue of my estate." Both trust instruments contain the following tax directive: "The Trustee shall pay that proportion of any inheritance and federal estate taxes levied on the Donor's gross estate determined for federal estate tax purposes which the property passing under this indenture of trust bears to the total amount of the Donor's gross estate."

---

[5] By her will, Rosamond gave Estelle McGrail real estate and $25,000.

## 1. *Apportionment of the Estate Taxes.*

Both Federal and Massachusetts law allow a charitable deduction in determining the amount of the tax to be imposed on the transfer of a taxable estate, and the amount of any such gift is deducted from the value of the gross estate in determining the value of the taxable estate. 26 U.S.C. §§ 2001, 2055 (1976). G. L. c. 65C, §§ 2, 3(*b*). If the charities pay a portion of the tax, by reduction of their gifts, the charitable deduction itself is also reduced, as a deduction is allowed only for the amount actually received by the charities. See, e.g., *Estate of Bush* v. *United States*, 618 F.2d 741, 742-746 (Ct. Cl. 1980). If the charities are not required by Rosamond's instruments or by G. L. c. 65A, § 5, to share in the payment of taxes, the individual beneficiaries will bear the entire tax burden. Although the total amount of the taxes will be less, the beneficiaries, other than the charities, will receive considerably less than if the charities are to share the burden. Compare *Putnam* v. *Putnam*, 366 Mass. 261, 268-269 (1974), with *Persky* v. *Hutner*, 369 Mass. 7, 15 (1975). See also *Pastan* v. *Pastan*, 378 Mass. 148, 155 (1979).

The donor of a trust and "[a] testator may allow the burden of both the Federal and State tax to fall where the law has placed it, or he may shift the burden and provide that it shall be ultimately paid out of the shares of those who otherwise could not be required to bear any part of either tax." *Beals* v. *Magenis*, 307 Mass. 547, 550 (1940). However, in the absence of testamentary direction, apportionment is made in accordance with State law, *Riggs* v. *DelDrago*, 317 U.S. 95 (1942), *Malden Trust Co.* v. *Bickford*, 329 Mass. 567, 569 (1952), specifically, G. L. c. 65A, § 5.[6]

---

[6] That statute, as amended through St. 1976, c. 515, § 1, provides: "Whenever it appears upon any accounting, or in any appropriate action or proceeding, that an executor, administrator, trustee or other person acting in a fiduciary capacity, has paid or may be required to pay an estate tax levied or assessed under the provisions of chapter sixty-five C, or under the provisions of this chapter, or under the provisions of any estate tax law of the United States heretofore or hereafter enacted, upon the transfer of the estate of any person who at the time of his death was an inhabitant of

There is no dispute as to the manner in which the total tax bill is to be apportioned among the described portions of

this commonwealth, the net amount of said tax shall be apportioned among and borne by recipients and beneficiaries of the property and interests included in the gross estate in the following manner: (1) If any portion of the estate passed under the will of the decedent, such proportion of the net amount of the tax so levied or assessed shall, except as otherwise provided or directed by the will, be charged to and paid from the general funds of the estate as the net amount of the property passing under the will and included in the measure of such tax, exclusive of property over which the decedent had any power of appointment as defined from time to time by the estate tax laws of the United States, bears to the amount of the net estate as hereafter defined in this section. (2) If any portion of the property with respect to which such tax is levied or assessed is held under the terms of any trust created inter vivos or is subject to such a power of appointment, such proportion of the net amount of the tax so levied or assessed shall, except as otherwise provided or directed by the trust instrument with respect to the fund established thereby, or by the decedent's will, be charged to and paid from the corpus of the trust property or the property subject to such power of appointment, as the case may be, as the net amount of the property of such trust or property subject to such power of appointment and included in the measure of such tax bears to the amount of the net estate as hereafter defined in this section. The amount so charged shall not be apportioned between temporary and remainder estates. (3) The balance of the net amount of the tax so levied or assessed, or if paragraphs one and two are inapplicable the whole of the net amount of such tax shall, except as otherwise provided or directed by the decedent's will, be equitably apportioned among and charged to and paid by the recipients and beneficiaries of property or interests included in the measure of such tax and passing or arising otherwise than under the will of the decedent or by virtue of any such trust or by the exercise or nonexercise of any such power of appointment in the proportion that the net amount of such property or interests bears to the amount of the net estate as hereafter defined in this section; provided, that where any provision is made whereby any person is given an interest in income or an estate for years or for life or other temporary interest in any property or fund the amount so charged to such recipients or beneficiaries shall not be apportioned between temporary and remainder estates but shall be charged to and paid out of the corpus of such property or fund; and provided further, that any apportionment made under this section shall accord with applicable estate tax laws of the United States where such laws specify with respect to an apportionment. (4) For the purposes of the apportionment of the tax levied or assessed under the provisions of this chapter, or under the provisions of chapter sixty-five C, or under the provisions of any estate tax law of the United States, the term "net estate" as used in this section, shall mean the gross estate as defined by the applicable estate tax laws of the United States less the deductions, other than specific exemptions,

Rosamond's estate. By the terms of her instruments and by a stipulation of the parties, each portion is responsible for the share of the total tax which its assets generated. The question with which we are faced arises out of Rosamond's silence on the question as to which of the beneficiaries of each portion are to participate in the payment of that portion's allocated share of the total tax. The parties appear to agree (at least they do not contend otherwise) that, because of this silence or absence of direction, § 5 controls the resolution of the issue. *Riggs* v. *DelDrago,* 317 U.S. at 97-98. *Malden Trust Co.* v. *Bickford,* 329 Mass. at 569.

The individual parties argue, in effect, that § 5 is a limited equitable apportionment statute, that is, that it only apportions the burden of the total tax among the probate and nonprobate portions of an estate, cf. 1 Newhall, Settlement of Estates § 164 (4th ed. 1958), to avoid placing the entire tax obligation on the residue of the probate estate. See *Plunkett* v. *Old Colony Trust Co.,* 233 Mass. 471, 475-476 (1919). See also Annot., 68 A.L.R. 3d 714, 762 (1976) ("Several courts take the view that the general rule that the burden of the estate tax falls on the residuary estate has no application to nonprobate property which adds to the estate tax, and as to such property have adopted a limited rule of equitable apportionment as between the probate and nonprobate estate, holding that the nonprobate property must bear its proportionate share of the estate tax"). The charities contend that § 5 goes beyond that point to provide for total equitable apportionment, that is, "assets not includible in the taxable estate and which generate no part of the estate tax should not be burdened with the payment of any

allowed by the provisions of such laws. (5) If the court shall determine that it is inequitable, because of special circumstances, to apportion interest and penalties in connection with estate taxes as provided herein, it may direct apportionment thereof in such manner as it shall find equitable."

We do not view Rosamond's use of the term "gross estate" rather than "net estate" in the tax provisions of her trusts as frustrating her express intent to apportion the total tax burden among her probate estate and other assets. Her instruments are consistent with § 5 to the extent that each portion of the estate is to bear its proportionate share of the total tax.

portion thereof."[7]   Annot., 68 A.L.R. 3d at 795.   See also 3 Nossaman & Wyatt, Trust Administration & Taxation §§ 49.03-49.06 (rev. 2d ed. 1980).   We agree with the individual beneficiaries.

In analyzing § 5, we are mindful that "where the language of a statute is plain there is no room for speculation as to its meaning or its implication.   The Legislature must be presumed to have meant what the words plainly say, and it also must be presumed that the Legislature knew pre-existing law and the decisions of this court."  *Condon* v. *Haitsma,* 325 Mass. 371, 373 (1950).   Moreover, "It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation."  *Prudential Ins. Co. of America* v. *Boston,* 369 Mass. 542, 547 (1976).

Section 5 (1) directs that the proportionate share of the total tax generated by the assets of the probate estate "be charged to and paid from the general funds of the estate."  This provision was inserted by St. 1948, c. 605, § 1.   Prior to that the apportionment language of the statute as appearing in St. 1943, c. 519, § 1, read:  "In making such apportionment and proration allowance shall be made for any exemptions granted by the act imposing the tax, and for any deductions allowed by such act for the purpose of arriving at the value of the net estate."   The effect of the 1948 amendment on the 1943 total equitable apportionment provision, in respect to the probate portion of an estate, was determined in *Weingartner* v. *North Wales,* 327 Mass. 731, 734-735 (1951):  "After January 1, 1949 [the effective date of St. 1948, c. 605, § 1], there is to be no statutory apportionment of the Federal estate tax on property passing by will.   The executor is to make the payment, and is to make

---

[7] It should be remembered that the tax attributable to Rosamond's probate estate must, by the express terms of her will, be borne by the residuary beneficiaries.  Thus, the question, as it relates to the probate estate, is whether Laurence Bunker must bear the entire burden of the tax generated by the probate estate, and, if not, must he at least bear the entire burden of the tax attributable to the residue of the probate estate.

it from the residue." See also *Scherff* v. *Silinski,* 346 Mass. 691, 695 (1964). The fact that a charity is the residuary beneficiary under the will does not defeat payment of estate taxes from the residue of a probate estate. *YMCA* v. *Davis,* 264 U.S. 47 (1924). Cf. *Prescott* v. *St. Luke's Hosp.,* 280 Mass. 229 (1932). Further, since there is no equitable apportionment language in § 5 (1), contrast § 5 (3), we discern no fundamental principle of public policy in this Commonwealth which requires us to conclude that the taxes attributable to Laurence Bunker's share of the residue of the probate estate should be equitably apportioned against that share rather than being partially shifted to the charities' share of the residue. The charities' reliance on *In re Estate of Rankin,* 169 N.J. Super. 317 (1979), as support for such a proposition is misplaced, as there was a statutory foundation to the court's policy decision. See N.J. Stat. Ann. 3A: 25-33 (West 1953) ("In the absence of directions to the contrary . . . (ii) any deduction allowed under the law imposing the tax by reason of . . . the charitable purposes of the gift shall inure to the benefit of the fiduciary or transferee, as the case may be").

Nor do we view § 5 (2), which directs that the tax attributable to the transfer by inter vivos trusts "be charged to and paid from the corpus of the trust property" as treating inter vivos trusts differently from wills. We have in mind that "[i]n today's estate planning, it is not reasonable to conclude that a will is always of greater significance than an instrument creating an inter vivos trust." *First Natl. Bank* v. *Shawmut Bank,* 378 Mass. 137, 143 (1979). See also *State Street Bank & Trust Co.* v. *Reiser,* 7 Mass. App. Ct. 633 (1979). The charities contend that St. 1948, c. 605, § 1, removed the equitable apportionment language of St. 1943, c. 519, § 1, from only preresiduary interests passing under wills, "thereby eliminating the nuisance of apportioning death taxes to small bequests such as a fishing rod." Also, we note that it was pointed out in *Weingartner* v. *North Wales,* 327 Mass. at 734 n.1, that "[u]nder portions of § 5 not quoted in the opinion, there continues to be apportion-

ment, as under the 1943 act, as against others not taking by the will whose interests have been gathered into the gross estate."

Any force in the charities' argument is undermined by basic rules of statutory interpretation, which also lead us to conclude that the "others not taking by the will" referred to in *Weingartner* are those persons described in § 5 (3), i.e., those beneficiaries of property or interests "passing or arising otherwise than under the will of the decedent or by virtue of any such trust or by the exercise or nonexercise of any such power of appointment." Section 5 (3) makes express provision for equitable apportionment and further directs that "any apportionment made under this section shall accord with applicable estate tax laws of the United States where such laws specify with respect to an apportionment." Where the Legislature has carefully employed specific language in one paragraph of the statute, § 5 (3), but not in others which treat the same topic, § 5 (1) and (2), the language should not be implied where it is not present. See *County of Bristol* v. *Secretary of the Commonwealth*, 324 Mass. 403, 406-408 (1949); *General Elec. Co.* v. *Commonwealth*, 329 Mass. 661, 663-664 (1953); *Boylston Water Dist.* v. *Tohanto Regional Sch. Dist.*, 353 Mass. 81, 83-84 (1967). We conclude from our reading of St. 1943, c. 519, § 1, and St. 1948, c. 605, § 1, as well as from our study of equitable apportionment statutes of other jurisdictions, see, e.g., N.J. Stat. Ann. 3A: 25-33 (West 1953); N.Y. Estates, Powers and Trusts Law § 2-1.8(c) (McKinney 1981); Uniform Estate Tax Apportionment Act § 5, 8 U.L.A. 174 (Master ed. 1972), that had the Legislature intended to provide for total equitable apportionment, it knew how to do so. We do not read § 5 (2) as impliedly exonerating the charities from participating in the estate tax burden.

Our conclusion finds additional support in the fact that the Federal estate tax has always been treated as a residuary charge where the testator's instruments are silent. See 1 Newhall, Settlement of Estates § 163 (4th ed. 1958) ("[A]n estate tax is a tax on the estate before it goes over. For this

reason the federal estate tax is treated by our courts as prac-
tically an administrative expense"); 2 Nossamon & Wyatt,
Trust Administration & Taxation § 39.13 (rev. 2d ed. 1980)
("Since the estate tax is a residuary charge even though it
diminishes a residue devised to charity, the problems raised
by the 1932 statute [1932 amendment to Section 303(a),
1926 Revenue Act, now 26 U.S.C. § 2055(c) (1976)] . . .
are avoided where gifts to charity take the form of specific
devises, or specific or general, and not residuary legacies.
This is a point which should be considered where testamen-
tary trusts for charitable purposes are being created; and
the same considerations apply to inter vivos trusts except
where the probate estate of the settlor is chargeable with,
and is able to respond for, federal and state estate taxes").
The State estate tax is no different in nature from that of its
Federal counterpart: it is a tax on the transfer of a whole
estate by a decedent. *YMCA* v. *Davis*, 264 U.S. at 50.
*Plunkett* v. *Old Colony Trust*, 233 Mass. at 474-475. The
estate taxes must be borne by the residuary beneficiaries of
that portion of the estate.

The residuary beneficiaries of Rosamond's probate estate,
Laurence Bunker and the charities, are the recipients of the
property subject to Rosamond's power of appointment
which she exercised by will. Section 5 (2) requires that the
tax attributable to that portion of the estate "be charged to
and paid from . . . the property subject to such power of
appointment." Since equitable apportionment language is
absent from § 5 (2), the charities must participate equally
with Laurence Bunker in the tax generated by the transfer
of the property subject to the power.

Rosamond's silence on the matter of apportionment
among the beneficiaries of each portion of her estate does
not create an ambiguity or conflict of terms where none
otherwise exists. We do not, therefore, presume that she
could not have intended the conclusion that we have
reached and which increases the amount of the estate taxes.
Compare *Putnam* v. *Putnam*, 366 Mass. at 271. Had we
found it necessary to ascertain Rosamond's intent in respect

to this issue and, therefore, necessary to rely on the presumption against a testator's desire "to benefit the taxing authorities and no one else," *id.*, the charities would fare no better. Our conclusion enhances the gifts to Rosamond's adopted daughter and second cousin. See *Persky* v. *Hutner*, 369 Mass. at 15. Further, the charities' fear that our conclusion will result in harsh treatment not only of charities but of surviving spouses as well, see e.g., 26 U.S.C. § 2056 (1976), and G. L. c. 65C, § 3, is unfounded. General Laws c. 65A, § 5, is inapplicable where the tax burden has been apportioned by the testator. Thus, it is within the control of estate planners "to see where local law places the burden, and provide where the burden of such expenses will fall if local law is unsatisfactory." 2 Nossamon & Wyatt, Trust Administration & Taxation § 39.13.

In summary, as residuary beneficiaries under the will and trusts, the charities must bear their proportionate share of the tax generated by those portions of the estate. The residues of the probate estate and of the inter vivos trusts are to be charged with the payment of the taxes which must be calculated before the residue is divided.[8] See *McLaughlin* v. *Codman*, 332 Mass. 514, 519 (1955). The tax generated by the transfer of property subject to the power of appointment is to be charged against that property and hence borne by Laurence Bunker and the charities.

2. *The Fractional Share Gifts.*

As will be recalled, the trustee is directed by the First National Bank trust instrument to make gifts of smaller, fixed amounts and then "set aside one-third (⅓) of the trust property held by it on the day of the Donor's decease," in trust, for Estelle McGrail, "distribute one-third (⅓) of the trust property held by it on the day of the Donor's decease"

---

[8] Because of Rosamond's instruments and the parties' stipulation, we need not consider how § 5 (1) and (2) would be applied in the event the assets charged were insufficient to satisfy the tax bill. But see *Riggs* v. *DelDrago*, 317 U.S. at 101; 6 Page, Wills §§ 53.4-53.8 (Bowe-Parker rev. 1962); G. L. c. 191, §§ 26, 27. But see also *Quincy* v. *Rogers*, 9 Cush. 291, 296-297 (1852); *Prescott* v. *St. Luke's Hosp.*, 280 Mass. at 233.

to Laurence Bunker, and "distribute the rest, residue, and remainder of the trust property held by it on the day of the Donor's decease" to the charities, in equal shares.

Estelle McGrail argues that her gift has "a fixed value which is readily ascertainable, and constitutes the gift of a specific beneficial interest in the trust property."[9]   To prevent depreciation of her gift she focuses on the language "on the day of the Donor's decease" and argues that her share of the trust property must be valued as of the date of Rosamond's death.   Put another way, she claims, in essence, that she is entitled to an amount equal to one third of the value of the trust property on the date of Rosamond's death.   The charities contend that Estelle McGrail and Laurence Bunker's legacies are gifts of fractional shares of the trust property and as such they fluctuate in value.   Cf. *Pastan* v. *Pastan*, 378 Mass. at 156 n.15; 2 Newhall, Settlement of Estates § 350 & n.2 (4th ed. 1958).

We think that Rosamond's intention to make gifts of fractional shares of the trust property is manifest from the instrument itself and that the phrase "on the day of the Donor's decease" does no violence to her wishes.

Literal adherence to Rosamond's dispositive directions results in fluctuation of the value of her gifts.   The trustee must, as Estelle McGrail points out, "ascertain the make-up of the trust portfolio held by it at the time of [Rosamond's] death . . . [and] . . . set aside one-third of those investments . . . in a separate trust" for Estelle McGrail's benefit.   If the trust portfolio has remained identical in kind since the date of Rosamond's death, the value of the gifts will have fluctuated.   But undoubtedly the portfolio's contents have undergone change since Rosamond's death.   In view of the language of the trust instrument, we fail to see how this fact can insulate the gifts against depreciation in value.   Cf. *Boston Safe Deposit & Trust Co.* v. *Stone*, 348 Mass. 345, 349 (1965).

[9] Other than to argue that his gift is a preresiduary legacy, a contention with which we have agreed, Laurence Bunker takes no position on the question whether his gift has depreciated in value.

Moreover, any lingering doubt as to the nature of the gifts to Estelle McGrail and Laurence Bunker are dispelled by the language used in respect to the trust residue. As the charities point out, if controlling significance is to be given to the phrase "on the day of the Donor's decease," then the residue must also be valued as of that date. This would render Rosamond's dispositive language senseless because, as stated by the charities, "then there would be *no* share to absorb depreciation or benefit from appreciation."

Rosamond's use of the term "on the day of the Donor's decease" is not inconsistent with fractional share language. Cf. Casner, Estate Planning — Marital Deduction Provisions of Trusts, 64 Harv. L. Rev. 582, 585 n.15 (1951). To attach critical significance to that phrase and adopt Estelle McGrail's interpretation of the instrument produces an impossible result. On the other hand, if Rosamond's express directives are respected, her gifts, of fluctuating value, can be completed.

The cases are remanded to the Probate Courts for further proceedings consistent with this opinion.

*So ordered.*