MARIE ALBA *vs.* FIREMAN'S FUND INSURANCE COMPANY.

Suffolk.    May 13, 1936. — July 1, 1936.

Present: CROSBY, PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Insurance*, Fire: adjustment of loss; waiver of condition. *Agency*, Scope of authority. *Waiver*.

If an adjuster is sent, by a general agent of an insurer under a policy of fire insurance in the Massachusetts standard form, to investigate and adjust a loss, it is within the apparent scope of his authority to agree upon the amount of the loss.

The arbitration clause of a policy of fire insurance in the Massachusetts standard form becomes inapplicable if there is an agreement between the insurer and the insured upon the amount of loss.

After the insured's proof of loss under a standard policy of fire insurance, the insurer's denial of liability without disputing the amount of loss and without suggesting resort to the arbitration clause in the policy was evidence of its waiver of that clause.

CONTRACT.    Writ in the Superior Court dated December 4, 1930.

The action was tried before *Dillon*, J.    There was a verdict for the plaintiff in the sum of $7,114.50.    The defendant alleged exceptions.

*H. R. Bygrave*, for the defendant.

*C. C. Steadman*, for the plaintiff.

CROSBY, J.    This is an action of contract upon a policy of fire insurance, issued by the defendant to the plaintiff on a dwelling house in Revere, in this Commonwealth. There was a verdict for the plaintiff in the sum of $7,114.50. The case is before this court solely upon the defendant's exception to the denial of its motion for a directed verdict.

The policy is in the Massachusetts standard form and contains the following provisions: "In case of any loss or damage, the company, within sixty days after the insured shall have submitted a statement . . . . shall either pay the amount for which it shall be liable, which amount, if not agreed upon, shall be ascertained by award of referees as

hereinafter provided, or replace the property with other of the same kind and goodness. . . . In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men . . .; the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a condition precedent to any right of action in law or equity to recover for such loss . . . ."

The plaintiff testified that on December 24, 1928, her house in Revere, which was insured with the defendant company in the amount of $15,000, was damaged by fire; that she employed one Di Donato to represent her in the adjustment of the fire loss with the defendant; that he proceeded to perform the duties of an adjuster and thereafter brought her a paper entitled "Proof of Loss" (Exhibit 2) which recited the loss and claim at $5,100; that she signed by a cross; and that she had been paid nothing for the damage resulting from the fire.

Alexander J. MacDuff testified that he was a fire loss appraiser and fire loss adjuster with an office in Boston; that he was instructed in December, 1928, by Patterson, Wylde and Windeler "to go look at the loss at 36 Cummings Avenue, Revere," and was advised that this was a loss covered by insurance in the defendant company; that he got his orders from Miss Nellie A. Whitney who was employed by Patterson, Wylde and Windeler; that he met one Creber at the building when he went to look at the loss; and that he made a verbal report to Patterson, Wylde and Windeler, and wrote a letter (Exhibit 3) to Creber, dated January 21, 1929, which disagreed with a schedule of loss and denied that the defendant was liable to the assured for $5,100 as recited in the proof of loss.

Nellie A. Whitney testified that she was employed in the office of Patterson, Wylde and Windeler; that she recalled a loss on a policy in the Fireman's Fund Insurance Company which occurred in Revere on December 24, 1928; that she took some steps to have the loss adjusted; and

that whatever efforts she made in having an adjuster for the loss were toward having MacDuff do the work.

George B. Proctor testified that he was one of the partners in Patterson, Wylde and Windeler; that they represented the defendant as general agents in December, 1928, and January, 1929; that MacDuff was engaged in December, 1928, or January, 1929, to investigate, adjust and handle the loss; that he had no knowledge that MacDuff filed a written report and had never seen one; that he recognized the word "disclaimed" on Exhibit 2 as in his handwriting; that he used the word to note the fact that no part of the loss was to be paid; that he discussed the loss with MacDuff after it was reported, and after he investigated it; and that he knew MacDuff wrote a letter to Creber under date of January 21, 1929.

Severio Di Donato testified that he was an adjuster of fire losses; that the plaintiff agreed to employ him as her representative to adjust the fire loss; that thereafter he gave the loss to Creber who was also a fire loss adjuster; that he went to the scene of the fire and talked with Mac-Duff; that he received the proof of loss through the mail, together with an addressed envelope directed to MacDuff; that it was filled out with the exception of the execution; that the plaintiff executed the proof of loss by her cross in the presence of the witness at Medford, on January 17; that apart from this execution and the witnessing of it everything that was on the document at the time of the trial was on it then; that after it was executed, the witness mailed it to MacDuff on January 17, 1929; that before the witness got the proof of loss which MacDuff mailed to him, MacDuff said that the best he could do was $5,100; that the witness said that the loss was about $7,500 to $8,000, and he did not see why it should be settled for any less; that MacDuff said that in view of the fact that there was an investigation pending and "to save ourselves arbitration expenses I think that the offer is fair and that your client should take it," "If you can get your client to accept that why you will get your check in a week or two weeks and so I went———"; that MacDuff further said: "If

they sign the proof of loss and accept this amount of money you will be saving a great deal, sums of money on arbitration expenses and the case will be cleaned up"; that the witness "agreed for $5,100 provided that . . . [his] client would sign the proof of loss, this proof here"; that a few days later the witness received through the mail the proof of loss; that two or three days after he sent it back he saw MacDuff, who said that he had received it; and that about a week or ten days later he saw MacDuff and asked him when the drafts were coming, and MacDuff said "that the matter is under investigation and it was stopped by the fire marshal's office," and "that in view of the fact that indictments were pending that there would be no payment of loss."

L. Carl Creber testified that his business was that of a builder, fire loss adjuster and appraiser; that he was employed by Di Donato to aid him in the adjustment of this loss, and had submitted a schedule (Exhibit 4), which was accurate and truthful, to the defendant as a basis upon which it should make a settlement with the plaintiff; that $7,548.60 was the amount; and that he met MacDuff "at the loss," but he did not talk to the witness in reference to a settlement. The defendant admitted in court that it seasonably learned of the loss.

At the conclusion of the evidence the defendant moved for a directed verdict in its favor on the ground that there was no evidence in the case that "MacDuff or anybody else on behalf of the defendant ever agreed or had any authority to agree upon the amount of the loss or that they did so agree or that they ever waived or agreed to waive the provisions of the policy requiring that the loss must first be determined by a reference to arbitration." It is plain on the above recited evidence that a verdict could not properly have been directed for the defendant on the ground specified. The evidence warrants a finding that the general agents of the defendant, Patterson, Wylde and Windeler, authorized and directed MacDuff to investigate, adjust and handle the loss. If an adjuster is sent by a general agent to investigate and adjust a loss it is within the apparent scope of his

authority to waive proofs of loss, and to agree upon the amount of the loss. *Wholley* v. *Western Assurance Co.* 174 Mass. 263. *Shapiro* v. *Security Ins. Co.* 256 Mass. 358, 365. It was for the jury to decide whether an agreement as to the amount of loss was entered into between MacDuff and Di Donato under which a proof of loss was executed by the plaintiff and sent to the defendant. *Bresky* v. *Rosenberg,* 256 Mass. 66, 75. If the plaintiff's agent and MacDuff agreed to settle, the condition with reference to arbitration would not apply. *Wholley* v. *Western Assurance Co.* 174 Mass. 263, 265. *Green* v. *Star Fire Ins. Co.* 190 Mass. 586, 598. As the jury could have found, in view of the evidence, that there was an agreement as to the loss, this action was properly brought without any resort to arbitration.

If, however, it be assumed that the jury could not properly have found on the evidence that an agreement as to loss was made, it could have been found that the defendant had waived the requirements of the arbitration clause in the policy. Statements made by MacDuff to Di Donato tended to show that the defendant did not intend to pay the claim. So far as appears, no suggestion was ever made by anyone representing the defendant that the matter should be submitted to arbitration after the proof of loss was filed. Nearly two years elapsed before the action was brought and the defendant did nothing, but in effect denied liability. The refusal to pay the loss was not based on the amount claimed by the plaintiff. On the facts which could have been found from the evidence a finding was warranted that the defendant waived the condition in the policy in regard to arbitration. The case on this point is governed by *Lamson Consolidated Store Service Co.* v. *Prudential Fire Ins. Co.* 171 Mass. 433, *Fall River* v. *Aetna Ins. Co.* 219 Mass. 454, 458.

As the defendant's motion for a directed verdict in its favor could not properly have been granted, the entry must be

*Exceptions overruled.*