PIPER CAFE, INC. & others[1] *vs*. COMMERCIAL UNION
INSURANCE COMPANIES.

No. 88-P-125.

Hampden.    December 13, 1988. — May 15, 1989.

Present: GREANEY, C.J., CUTTER, & PERRETTA, JJ.

*Insurance*, Fire, Agreement on amount of loss, Arbitration, Waiver. *Waiver*.

An oral agreement between insured parties and their insurer, as to the
    amount of a loss insured under a standard-form policy of fire insurance,
    would satisfy the language of policy provisions required by G. L. c. 175,
    § 99, Twelfth, so as to avoid arbitration as a condition precedent to the
    insureds' commencement of an action against their insurer to recover
    for such loss [321-323]; consequently, summary judgment in favor of
    the insurer was inappropriate where the record showed the existence of
    such an oral agreement and presented a factual question whether the
    oral agreement provided that it would not become effective unless re-
    duced to writing [323].

CIVIL ACTION commenced in the Superior Court Department
on August 3, 1984.

The case was heard by *John F. Moriarty*, J., on a motion
for partial summary judgment.

*Laurence Field* (*Erik Lund* with him) for the plaintiffs.

*Paul S. Weinberg* for the defendant.

CUTTER, J. On May 10, 1983, a fire, possibly incendiary
in origin, took place in a commercial building (the locus) in
Springfield owned by Calabrese and Peluso (see note 1). Piper
Cafe, Inc. (Piper), a Massachusetts corporation of which Cala-
brese and Peluso were the principal shareholders, had operated
a restaurant known as Gabriel's, under a rental arrangement
from themselves, on the first floor and part of the second floor
of the locus. The locus and its contents were insured by Piper,

---

[1] Gabriel Calabrese and Aniello Peluso.

Calabrese, and Peluso (collectively the plaintiffs) against fire and loss of earnings by Commercial Union Insurance Companies (CU).

There appears to be no dispute that the policy contained the provisions required by G. L. c. 175, § 99, Twelfth, as amended through St. 1981, c. 718, §§ 1 & 2, to be set out "substantively" in the standard form of Massachusetts fire policy. Included was the following paragraph: "In case of loss under this policy *and a failure of the parties to agree as to the amount of loss*, it is mutually agreed that the amount of such loss shall be referred to three disinterested [persons] . . . and the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference, unless waived by the parties, shall be a *condition precedent to any right of action in law or equity to recover for such loss . . .*" (emphasis supplied).

The plaintiffs promptly notified CU of the loss and about October 3, 1983, submitted to CU written proof of loss.[2] CU rejected this claim of loss about November 1, 1983.

After significant negotiations, the plaintiffs brought an original complaint in the Superior Court, the progress of which probably can best be described by the following chronology:

> (a) *December 22, 1983*. Counsel for the plaintiffs sent what purported to be a demand letter under G. L. c. 93A in behalf of all the plaintiffs to recover damages caused by the fire.
>
> (b) *August 3, 1984*. The original complaint was filed asserting claims of unfair practices under G. L. c. 93A, § 2, and c. 176D, § 3(9).
>
> (c) *August 27, 1984*. CU filed a motion for a more definite statement, or in the alternative, for dismissal.

---

[2] The written claim was for (1) loss of building, $116,290.08; (2) loss of contents, $31,467.27; and (3) loss of business income, $25,000. One of the plaintiffs in an affidavit at least suggested that, during CU's investigation of the claim, CU was requesting information not relevant to the plaintiffs' claim of loss and to which CU was not entitled.

(d) *November 5, 1984.* A hearing on the motion mentioned in subparagraph (c) *supra,* was held. As a consequence, discussions between counsel took place.

There seems to be no serious dispute that a purely *oral* agreement was reached in November, 1984, as to the *amounts* of the plaintiffs' claims (in which the amount of business income loss, see note 2, *supra,* was reduced to $18,000 from the claimed $25,000). There was, however, substantial difference of understanding by the plaintiffs' counsel and CU's counsel whether there was then an oral arrangement that a written agreement would be filed reciting the amounts upon which oral agreement had been reached.[3] The chronology continues:

(e) *December 6, 1984.* CU's attorney sent to the plaintiffs' attorney for signature a document entitled "Agreement as to Loss," reflecting the amounts of loss stated in the oral agreement. This was followed on *January 11, 1985,* by a letter from CU's counsel to the plaintiffs' counsel enclosing a slightly revised "Agreement as to Loss."

(f) *April 23, 1985.* After further correspondence between counsel, CU's counsel filed a motion to dismiss or, in the alternative, for summary judgment. A hearing on this motion, based on the plaintiffs' alleged failure to comply with G. L. c. 175, § 99, quoted above took place before Superior Court judge no. 1. On *May 31, 1985,* that judge ruled that (with the consent of the plaintiffs' counsel) Piper's claim could be dismissed without prejudice. That

---

[3] The motion mentioned above in subparagraphs (c) and (d) was withdrawn when the plaintiffs' attorney and CU's attorney reached an *oral* agreement. The first paragraph of the letter of January 11, 1985, mentioned below, reads: "It was my understanding, when I took my Motion off the list, that you would have your client sign an Agreement as to Loss as per our oral agreement and return it to me forthwith. It was also my understanding that upon receipt of the Agreement, the company would render a decision as to acceptance or denial of liability within two weeks, and that in the event the decision was to deny liability, you would thereupon amend your Complaint to state a count for breach of contract in the amount agreed upon."

judge denied dismissal of the claim of Peluso and Calabrese.[4]

(g) *June 24, 1985.* CU denied the plaintiffs' claim under the policy.

(h) *October 11, 1985.* CU's answer and counterclaim against Calabrese and Peluso was filed.[5]

On *February 13, 1987,* the plaintiffs moved to amend their complaint (1) to add Piper once more as a plaintiff and (2) to substitute a whole new complaint. Counts 2 and 3 of this new complaint were for breach of contract. Count 1 was based on c. 93A. This motion to amend, in view of CU's somewhat slow-moving proceedings, properly was allowed by Superior Court judge no. 3 on *March 5, 1987.* CU then on *March 16, 1987,* filed a motion for partial summary judgment supported by the affidavit of its counsel. Superior Court judge no. 4, despite the opposition of the plaintiff's counsel, on *April 6, 1987,* issued a memorandum and order allowing CU's motion for partial summary judgment and ordering that counts 2 and 3 of the amended complaint be dismissed. On *April 14, 1987,* interlocutory summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), was entered, with the approval of Superior Court judge no. 4.[6]

---

[4] Further proceedings took place which do not seem materially to affect the outcome of this case. On *June 13, 1985,* a motion to reconsider the action of Superior Court judge no.1 was filed and on *August 2, 1985,* was denied by him. On *July 23, 1985,* a petition to this court under G. L. c. 231, § 118, was filed to vacate the order of Superior Court judge no. 1 on May 31, 1985. This petition was denied by a single justice of this court on *July 23, 1985,* and a motion to reconsider was denied on *September 19, 1985.*

[5] On *November 14, 1986,* CU filed a renewed motion for summary judgment. This was denied by Superior Court judge no. 2 after hearing. In his affidavit of March 13, 1987, CU's counsel averred that the plaintiffs' attorney had stated to Superior Court judge no. 2 in oral argument "that the original complaint was not brought for breach of contract but was only for alleged chapter 93A violations." The affidavit of CU's counsel asserted that the time in which any claims under the insurance policy could have been brought expired on May 9, 1985.

[6] Reconsideration of the motion was sought, supported by an affidavit of Calabrese, and a further affidavit of the plaintiffs' counsel. Reconsideration

1. The principal question in this case really comes down to whether an *oral* agreement about the amount of an insured loss (even if not embodied later in a written memorandum) will satisfy the pertinent language of G. L. c. 175, § 99, Twelfth, in avoiding arbitration as a condition precedent to an insured's initiation of an action against an insurer. The language of § 99 does not decide the question with desirable clarity. We examine (a) the language of § 99, Twelfth, quoted in the second paragraph of this opinion beginning with the words (emphasis supplied), "In case of loss under this policy *and a failure of the parties to agree as to the amount of loss,*" and (b) the language of the next paragraph of § 99, Twelfth, set out in the margin.[7] It is surprising that this issue has not been decided over the many years § 99 has been in effect.

In many places in § 99 (as periodically revised) successive Legislatures have shown that, when they wanted some document to be in writing, they knew how to express that intention. It thus is of some significance that no such requirement is stated directly with reference to the words "failure of the parties to agree." See *Beeler* v. *Downey,* 387 Mass. 609, 616 (1982);

---

was denied on *May 21, 1987.* On motion of the plaintiffs, Superior Court judge no. 4 certified on *August 17, 1987,* that the issues involved in counts 2 and 3 were "sufficiently separate and distinct from the issues in count 1," so that final judgment should be entered forthwith under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). On *October 30, 1987,* Superior Court judge no. 4 denied a motion to correct the record in various respects which do not seem material to the principal questions still in issue. The judge pointed out that, if it should become necessary for this court to decide whether "a party against whom a partial summary judgment is entered can get another bite at the apple by filing a motion for reconsideration with additional affidavits," the present record was sufficient to enable this court to decide that question of law.

[7] That paragraph reads: "No suit or action against this company for the recovery of any claim by virtue of this policy shall be sustained in any court of law or equity in this commonwealth unless commenced within two years from the time the loss occurred; provided, however, that if, within said two years, in accordance with the provisions of the preceding paragraph, the amount of the loss shall have been referred to arbitration *after failure of the parties to agree thereon,* the limitation of time for bringing such suit or action shall in no event be less than ninety days *after a valid award has been made upon such reference or after such reference or award has been expressly waived by the parties . . . .*" (emphasis supplied).

*First Natl. Bank* v. *Judge Baker Guidance Center*, 13 Mass. App. Ct. 144, 153 (1982), where it was said, "Where the Legislature has . . . employed specific language in one paragraph . . . [of a] statute . . . but not in others which treat the same topic . . . the language should not be implied where it is not present."

Arguments have been made in the briefs and orally that, on the facts of some of the relevant cases, agreement about the amount of losses had been in fact expressed in writing at some stage of the case. In *Molea* v. *Aetna Ins. Co.*, 326 Mass. 542, 547 (1950), however, it was said, "While the parties have all argued the question of waiver as the issue, we believe that strictly speaking the issue is not one of waiver but rather whether . . . the parties *agreed* . . . upon the amount of loss" (emphasis supplied). In the same case (at 548), it was said, quoting from *Union Inst. for Sav.* v. *Phoenix Ins. Co.*, 196 Mass. 230, 236 (1907), "A jury has often been permitted to infer a waiver of a special [insurance company] defence . . . from very slight evidence. But we are not aware of any case in which such an inference has been allowed . . . without proof of some conduct of the company bearing upon the particular defence."

We perceive no reason why "slight evidence" of a waiver (which could be oral or by company action not in writing) should be given more weight than strong indication of an *oral* agreement as to the amount of the loss. See the *Union Inst.* case at 236. See also *Alba* v. *Fireman's Fund Ins. Co.*, 295 Mass. 80, 84 (1936). Such evidence of the existence of an oral agreement we observe in CU's attorney's withdrawal of his motion despite his accompanying letter to which reference already has been made. See note 3, *supra*.

In *United States* v. *Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986), on facts somewhat similar to those here presented, it was said, "The law [under § 99] is well settled that if the insurer and the insured agree to the amount of loss then the arbitration reference provision . . . does not apply." Representations by the insurer in that case "that it would pay its appraised figure

did not require a *formal* acceptance by [the insured]" (emphasis supplied).[8]

We think that this whole record shows in fact there was at least an *oral* agreement between the plaintiffs and CU as to the amount of loss. Such an oral agreement (unless subject to an integral explicit agreement that it would not become effective until reduced to writing) would be sufficient under § 99 (see note 7, *supra*) to permit bringing this action. Whether the oral agreement contained any such express conditions would be at least a mixed question of law and fact sufficient to preclude summary judgment.

2. Superior Court judge no. 4, in view of our decision in the final paragraph of part 1 above must be regarded as having misapprehended the effect under the relevant parts of c. 175, § 99, of an unconditional *oral* agreement as to the *amount* of loss. See the second paragraph of this opinion and note 7, *supra*. He may merely have assumed (not unreasonably in view of the state of the decisions at that time) that a *written* agreement as to the loss was required. This case is one where the judge's misapprehensions about the law and the parties' disagreements about the terms of their agreement seem to us sufficiently basic to have required Superior Court judge no. 4 to deny summary judgment.[9]

3. Other questions raised in the briefs and at the arguments are discussed in the margin.[10]

---

[8] We do not view the case of *Trempe* v. *Aetna Cas. & Sur. Co.*, 20 Mass. App. Ct. 448 (1985), as having any intended bearing upon whether an agreement under the relevant portions of § 99, already discussed, must be in writing. The *Trempe* case is here significant (at 452-459) principally with respect to the original complaint claims under G. L. c. 93A.

[9] We comment that counsel for the plaintiffs might well have provided counsel for CU with the written agreement about the amounts of losses which he was requesting. In the state of the decisions (as we have ruled above) it was permissible for her not to do so. Counsel for CU, however, also may have been unduly rigid in insisting on his view that a *written* agreement about the amount of loss was required under § 99.

[10] (a) The single justice of this court referred to this panel the question whether to consider an affidavit of Mark Mullane. The affidavit has been read but does not seem to us significant with respect to any issue presented

4. We remand the case to the Superior Court for trial on the issues (preferably to be submitted to the jury on special questions suitable to develop answers on these issues) of (1) whether CU is liable on the policy (as the amount of loss already has been determined) and (2) whether the agreement as to the amount of loss had been made expressly subject to a stated, explicit condition that the oral agreement would not become effective unless and until reduced to writing, and also (3) for any further appropriate proceedings consistent with this opinion.

*So ordered.*

---

upon this appeal. We affirm the action of the single justice in denying the motion for leave to file the affidavit in a supplemental appendix.

(b) This court in *James Ferrera & Sons* v. *Samuels*, 21 Mass. App. Ct. 170, 173 (1985), interpreted G. L. c. 260, § 2B, as being a statute of repose rather than a statute of limitation, following *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982). We think that the distinction discussed in the *James Ferrera & Sons* case, 21 Mass. App. Ct. at 173 makes clear that c. 175, § 99 (see portion quoted in note 7, *supra*), is not a statute of repose but simply a usual statute of limitation upon the bringing of an action after a stated period following the date on which the cause of action accrues. Section 99 does not purport completely to eliminate any *cause of action* after any *stated* time against any defendant.

(c) As already stated, Superior Court judge no. 3 allowed on March 5, 1987, a motion of the individual plaintiffs to amend the original complaint by restoring Piper as a plaintiff and by substituting a whole new complaint for the original complaint. This new complaint added counts 2 and 3 for all of the plaintiffs for alleged breach by CU of the insurance contract and not merely for violation of G. L. c. 93A, the basis of the original complaint. The record shows no appeal from the allowance of this amendment. We do not decide whether such an amendment would have been permissible under *Bengar* v. *Clark Equip. Co.*, 401 Mass. 554, decided January 19, 1988, overturning the decision of this court, 24 Mass. App. Ct. 41, decided April 7, 1987. The *Bengar* case has been dealt with by St. 1988, c. 141, § 1 (an emergency statute effective on its approval on July 14, 1988), permitting a wide variety of amendments (both in then pending cases and in later brought cases) which could relate back to the bringing of the original complaint. The 1988 statute appears to have been intended by the Legislature to offset (in essence, to overrule) the 1988 *Bengar* case. See *Wood* v. *Jaeger Sykes, Inc., ante* 199, 200-203 (1989).